**Herbert W. DONAHUE, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 227–89C.**

United States Court of Federal Claims.

June 5, 1995.

**508**

David P. Voerman, Voerman & Carroll, P.A., New Bern, NC, for plaintiff.

Charles F. Beall, Jr., with whom were Thomas W. Peterson, Asst. Director, David M. Cohen, Director, Frank W. Hunger, Asst. Atty. Gen., Civil Div., Dept. of Justice, Washington, DC, for defendant. Lt. Col. D.P. Gallaher, Office of the Judge Advocate Gen., Dept. of the Navy, Arlington, VA, of counsel.

## OPINION

SMITH, Chief Judge.

This case is before the court on cross-motions for summary judgment. At issue is an October, 1991 recommendation of the Board for Correction of Naval Records (BCNR), which recommended that plaintiff be placed on a Temporarily Disabled Retirement List (TDRL) with a 10 percent disability. Also at issue is a claim for an attorney's fee award to the plaintiff as a "prevailing party" under the provisions of the Equal Access to Justice Act (EAJA).[1] Plaintiff argues that the BCNR recommendation is arbitrary and capricious, and claims entitlement to EAJA fees because plaintiff has already received most of the relief sought. Defendant argues that the BCNR recommendation is justified, and that any EAJA award is either inapplicable or premature. After careful consideration of both parties' briefing and oral argument, this court must grant summary judgment for the defendant, and deny plaintiff's motion.

## FACTS

Plaintiff Herbert W. Donahue enlisted in the United States Marine Corps in 1960. On June 3, 1975, he was commissioned as a Limited Duty Officer, with the rank of Second Lieutenant. He was promoted in due course to the temporary rank of Major and to the permanent rank of Chief Warrant Officer, W-2. In June 1988, plaintiff was evaluated by a Medical Board convened by the Commanding Officer, Naval Hospital, Bethesda, Maryland, as part of the Department of the Navy's physical disability evaluation program. A Medical Board report based on this evaluation documented plain-

---

1. The relevant portion of the Equal Access to Justice Act is codified at 28 U.S.C. § 2412.

tiff's condition. Pursuant to the Navy's regulations for its Disability Evaluation System (DES), plaintiff's condition was next considered by the Navy's Central Physical Evaluation Board (CPEB). In September 1988, the CPEB made an initial recommendation, not amounting to a finding, that plaintiff was physically unfit for duty. At that time, the CPEB recommended a disability rating of 10 percent. In support of its recommendation, the CPEB report detailed specific injuries to plaintiff's right and left knees. Under Marine Corps regulations, CPEB findings are advisory only, and not final or conclusive until approved by the Secretary of the Navy.[2]

As plaintiff was proceeding through the Disability Evaluation System, he was denied promotion to the next higher rank of Chief Warrant Officer, W–3, for the second time, by the promotion selection board convened by the Secretary of the Navy in August 1988. At this point, plaintiff had accrued approximately 28 years and 6 months of active service creditable to retirement. The plaintiff was informed on September 16, 1988 that he would be retired on November 1 of that year pursuant to 10 U.S.C. § 564(a)(1), which mandates separation within 60 days for members with plaintiff's amount of active service. In late September 1988, plaintiff requested deferment of his retirement in order to obtain additional medical treatment he had scheduled, and to conclude DES procedures to establish his disability rating. Plaintiff's request for deferment was approved by the Secretary of the Navy for four months, the maximum period authorized by statute for this type of separation; plaintiff's retirement was thus rescheduled by the Secretary to March 1, 1989.[3]

On October 11, 1988, plaintiff submitted a rebuttal statement disputing the 10 percent disability finding of the CPEB, claiming that he was entitled to a 55 percent rating. After considering plaintiff's rebuttal, the CPEB made no revisions to its earlier decision. However, as a result of plaintiff's rebuttal, the Navy scheduled a Regional Physical Evaluation Board hearing for December 6, 1988, at the Naval Training Center, Great Lakes, Illinois, to further review the disability rating. In late November 1988, plaintiff contacted the Executive Secretary for the Navy's Disability Evaluation System, Commander L.M. Acuff, and informed him that he had scheduled hospitalization and treatment for knee surgery for February 1989. Plaintiff's doctor recommended the surgery, which involved fusion of the knee joint. Plaintiff requested a delay in or cancellation of the Regional hearing until after surgery. Acuff responded by cancelling the Regional Hearing, effectively terminating plaintiff's DES processing.

Soon after his surgery, plaintiff requested an additional deferment of his retirement from the Secretary of the Navy pending reinitiation and completion of his disability processing. This request was denied by the Assistant Secretary on February 27, 1989, and plaintiff was retired on March 1, 1989. Plaintiff was still recuperating from his recent surgery on this date, and had 29 years and 1 month of active service creditable for retired pay.

Plaintiff, who had wished to procure a permanent disability rating before retirement, filed a complaint in this court on April 24, 1989, alleging that he was discharged without a formal disability hearing in violation of the regulations of the United States Marine Corps. The case was stayed on October 2, 1989 pending plaintiff's appeal to the BCNR. As a result of this appeal, the BCNR ordered on October 21, 1991, that plaintiff be placed upon a Temporary Retirement Disabled List.[4] This placement was to be retroactive and to originate on February 28, 1989 (the day before plaintiff's mandatory retirement). In conjunction with this decision, plaintiff was reimbursed approximately $18,000 in alimony expenses. These expenses were incurred by plaintiff between discharge and the BCNR decision; plaintiff

---

2. Marine Corps Order P1900.16 (Marine Corps Separation and Retirement Manual), § 8103.

3. 10 U.S.C. § 564(b).

4. For the purposes of this opinion, a BCNR recommendation will be referred to as a BCNR "order" or "decision" if the Secretary of the Navy accepts the recommendation and orders its implementation.

would not have incurred these expenses if he had been placed on the TDRL in 1989. Plaintiff, in an amended complaint, contested the BCNR's decision, deeming it arbitrary and capricious. Plaintiff argues that the BCNR's decision should have provided plaintiff with a permanent disability rating of at least 40 percent, effective retroactively to February 28, 1989.

The TDRL procedures require periodic medical examinations to track injury or disease so that a permanent disposition can eventually be made. At the conclusion of TDRL procedures in March 1994, the Marine Commandant, on the recommendation of the CPEB, ordered plaintiff retired on permanent disability ratable at 40 percent. Plaintiff, who accepts his current 40 percent rating, concedes that the majority of claims raised in both his initial complaint, and his amended complaint are now moot. The sole issues which plaintiff continues to contest are the propriety of the October 21, 1991 BCNR decision, which plaintiff claims is arbitrary and capricious, and the availability of attorney's fees for plaintiff under the "prevailing party" provisions of EAJA.

## DISCUSSION

Plaintiff argues that the October, 1991 BCNR decision is arbitrary and capricious. That decision, which provided for plaintiff's retroactive placement on the TDRL as of February 28, 1989, at 10 percent disability, also became the catalyst for the final permanent retirement disposition of 40 percent. The decision also provided for reimbursement to plaintiff of approximately $18,000 in alimony payments.[5] Plaintiff contends that the BCNR should have rated him at 40 percent disability at the time of his March 1, 1989 discharge because of the condition of his knees. Plaintiff contends that the CPEB recommendation of 1989, upon which BCNR based its decision, erroneously analyzed the available medical evidence.

■■■ The BCNR's mandate is to recommend the correction of a military record when necessary to correct an error or injus-

tice. *See* 32 C.F.R. § 723.1(b). Judicial review of a BCNR decision should be limited to whether the board's decision was "arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations." *Heisig v. United States,* 719 F.2d 1153, 1156 (Fed.Cir.1983); *Bosch v. United States,* 27 Fed.Cl. 250, 264 (1992). This court's scope of review of the BCNR decision is therefore quite limited. *Bowman Transp., Inc. v. Arkansas–Best Freight Sys.,* 419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974); *Bosch,* 27 Fed.Cl. at 264. The arbitrary and capricious standard of review does not require a reweighing of the evidence, but rather a simple determination that a reasonable mind could support the challenged conclusion. *Consolo v. Federal Maritime Commission,* 383 U.S. 607, 619, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966); *Heisig,* 719 F.2d at 1157; *Taylor v. United States,* 33 Fed.Cl. 54, 56 (1995). The key issue in this case, therefore, is whether a reasonable mind could have considered the BCNR's decision as one which was in the interests of justice.

■■■ The Marine Corps Separation and Retirement Manual emphasizes the importance of making the completion of disability processing a soldier's highest priority before retirement:

Section 2007. Physical Examinations.

1. All officers should schedule a retirement physical examination not more than 6 months nor less than 3 months prior to the effective date of retirement in order to allow time, if necessary, for any corrective surgery or for disability proceedings to be completed beforehand. The time required for physical disability proceedings varies greatly, depending on the circumstances in each case; however, it may be expected to take 3 to 4 months from the initial physical examination until final action by the Secretary of the Navy.

2. Officers subject to involuntary retirement should be particularly aware of the provisions of the preceding paragraph.

---

**5.** The income of members of the Marine Corps who are on the TDRL is not subject to alimony payments; for alimony purposes, the member's income is treated as 100 percent disability income during the TDRL placement.

In order for a mandatory retirement to be deferred for physical reasons the Marine must be an inpatient at a hospital or have disability proceedings pending.

In late September 1988, plaintiff requested and was granted a four-month deferral of retirement, the maximum time allowable by law pursuant to 10 U.S.C. § 564(b). At the time of this deferment, plaintiff had begun disability proceedings. Plaintiff states in his affidavit that he knew his disability proceedings would terminate if he cancelled his Regional Medical Board hearing, which was scheduled near the end of his four-month deferral period. At that time, plaintiff thought he could obtain another deferment to re-initiate disability processing. Plaintiff could have appeared before the Regional Board, and personally testified as to both his condition and his intention to undergo the knee fusion, but decided against this action. The court notes that TDRL placement is warranted where a surgery scheduled in the future would undoubtedly cause permanent disability; thus, the TDRL could have been recommended by the Regional Board. *See Beckham v. United States,* 183 Ct.Cl. 628, 635 n. 5, 392 F.2d 619 (1968), *later proceeding,* 186 Ct.Cl. 963 (1969).

Because the 1988 CPEB decision was only a recommendation, the plaintiff was discharged before his disability processing had been completed, and before he had been given a Regional Medical Board hearing. It is undisputed that plaintiff opted in late November 1988 to cancel this hearing, scheduled for December 6, 1988, and to schedule surgery instead. The surgery, elective in nature, was recommended to address injuries to the knee which had occurred over a period of years. Neither party disputes that if plaintiff had postponed or foregone the surgery, he could have completed his disability processing prior to discharge.

No member of the armed forces may be retired or separated for physical disability without a formal hearing if the member demands one. 10 U.S.C. § 1214. In this case, plaintiff had retracted his demand for a formal hearing by notifying Commander Acuff that he would not appear at his Regional Board hearing. Plaintiff understood that termination of DES processing was likely if he did not appear at the Regional Board hearing. Plaintiff, by waiving his demand for a formal hearing, may not have been owed any further consideration for disability, let alone a rating as high as 40 percent. At a minimum, a reasonable mind could conclude that plaintiff's actions had foreclosed any right to contest the 10 percent CPEB rating. The BCNR decision, therefore, could hardly be described as arbitrary or capricious.

The BCNR decision of October 21, 1991, however, not only granted plaintiff the 10 percent disability recommended by the CPEB, but by placing plaintiff on a TDRL, allowed for free medical examinations and the chance to eventually receive a higher level of permanent disability. In addition, the BCNR took a notable additional step: it provided the plaintiff with $18,000 in alimony reimbursement to compensate plaintiff for the post-discharge period when plaintiff was not on a TDRL. Thus, in practical terms, the BCNR gave the plaintiff the relief he sought. The BCNR's October, 21, 1991 decision cannot therefore be viewed as either arbitrary or capricious. Accordingly, this court finds unnecessary any discussion of whether plaintiff's disability status between the period of September, 1988 and March, 1994 (when the rating was raised to 40%), was not supported by substantial evidence.

Plaintiff also seeks attorney's fees as a prevailing party under EAJA. Plaintiff conceded at oral argument that EAJA "prevailing party" awards do not apply to actions taken before the BCNR. *See, e.g., Spinks v. United States,* 4 Cl.Ct. 723, 725 (1984). Plaintiff also concedes that an EAJA award must be based upon a judgment for the plaintiff in this court. The fact that a complaint was first filed here before the BCNR took steps which ultimately provided plaintiff with the relief sought will not, in itself, make plaintiff a prevailing party. *See Spinks,* 4 Cl.Ct. at 727. To allow otherwise would be to provide future plaintiffs with a perverse incentive to file premature military pay complaints with this court. This would cause an inversion of the well-established principle of administrative law that judicial review should only be sought *after* an exhaustion of admin-

istrative remedies, not before. The fact that plaintiff filed in this court before receiving BCNR relief should in no way elevate plaintiff's position over that of a party who wins BCNR relief and then does not need to file in this court. A suit in this court is not a way to get around Congress' legislative decision that EAJA does not apply to BCNR decisions. As the case before this court is being decided against the plaintiff, plaintiff will not be a prevailing party for the purposes of EAJA.

## CONCLUSION

The decision of the BCNR to place plaintiff retroactively on the TDRL at 10 percent disability, rather than being arbitrary and capricious, is clearly one a reasonable mind could consider as just under the circumstances. Therefore, the motion for summary judgment for defendant is granted, and for plaintiff is denied. Furthermore, plaintiff is not a "prevailing party" for the purposes of the Equal Access to Justice Act; plaintiff's claim for attorneys' fees is therefore dismissed. Each party to bear its own costs.

**IT IS SO ORDERED.**