Joseph E. NICKERSON, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 95–566C.

United States Court of Federal Claims.

May 20, 1996.

**583**

John W. Hofmeyer, III, Oelwein, Iowa, attorney of record for plaintiff.

Agnes M. Brown, Department of Justice, Washington, D.C., with whom was Assistant Attorney General Frank W. Hunger, for defendant. David M. Cohen, Director, James M. Kinsella, Assistant Director, and LTCOL David A. Anderson, Office of the Judge Advocate General, of counsel.

## OPINION

FUTEY, Judge.

This action is before the court on defendant's motion for summary judgment upon the administrative record. Plaintiff opposes the motion arguing that genuine issues of material fact exist, which preclude the granting of such a motion.

## Factual Background

On February 25, 1971, plaintiff enlisted and entered active duty in the United States Navy. Plaintiff served on active duty from the date of his enlistment until October 1, 1989, when he was honorably discharged with disability severance pay. At the time of his discharge, plaintiff had served on active duty for eighteen years and seven months. His last enlistment contract, with a two-month extension, was scheduled to expire on December 4, 1989.

During the course of his service in the Navy, four separate medical boards (two in 1978,[1] one in 1979, and one in 1989) diagnosed plaintiff with pulmonary sarcoidosis.[2] The symptoms exhibited by plaintiff included intermittent periods of persistent coughing. Available documentation indicates that plaintiff's first two medical boards of January 25, 1978, and August 31, 1978, established the diagnosis of sarcoidosis. Plaintiff was then placed on a period of limited duty but was returned to full duty in late 1978.

On December 7, 1979, the report of plaintiff's third medical board was completed. Based on plaintiff's symptoms, the medical board diagnosed plaintiff's condition as sarcoidosis with arthralgias. The medical board's report indicated that, although plaintiff was not fit for full duty, he was fit for six months of limited duty during which time he would be treated and observed on an outpatient basis. Two physicians signed the report. In addition, the Chief, Bureau of Medicine and Surgery, and the Chief of Naval Personnel concurred in the disposition of the medical board. In early 1981, plaintiff was found physically fit to perform on active duty and returned to full duty status.

---

1. The parties agree that the reports of the first two medical boards cannot be located. Thus, only a sparse record of plaintiff's medical history from 1971 to 1988 is available. The fact that the first two medical boards diagnosed plaintiff as having sarcoidosis is, however, not disputed.

2. Sarcoidosis is defined as "[a] disease of unknown origin characterized by the formation of granulomatous lesions that appear esp. in the liver, lungs, skin, and lymph nodes." The American Heritage Dictionary 1091 (2d college ed. 1982).

In February 1989, plaintiff was classified as obese and placed on a command weight control program. During the course of the program, plaintiff suffered a two-week coughing spell. On May 9, 1989, plaintiff was evaluated by a medical doctor at the Naval Hospital in Portsmouth, Virginia. The doctor who examined him noted in plaintiff's medical record that he had carried a diagnosis of sarcoidosis since 1975. The same day, a gallium scan was conducted on plaintiff. The doctor reading the scan stated that the results were suggestive of a condition such as sarcoidosis, refused to rule out infection without correlation clinically, and noted that no x-rays were available for comparison. The radiographic report on plaintiff's May 9, 1989, chest x-ray indicated that the findings were "consistent with sarcoid[osis]." [3] Due to his cough, plaintiff returned to the hospital's pulmonary clinic several times over the following two months. The treating physician then placed plaintiff on limited duty and recommended his referral to a medical board.

Two physicians conducted plaintiff's fourth medical board on July 14, 1989. After reviewing plaintiff's medical history, physical examination, and laboratory results, the board diagnosed him as having sarcoidosis. The board concluded: "[plaintiff] is not fit for full duty but is fit for a period of limited duty to complete twenty years of active Navy service." [4]

Four days later, plaintiff informed the pulmonary clinic that his command might consider administrative action against him for his weight. The clinic advised him that the July 14 medical board should take precedence over any such action.

In response to the finding of the fourth medical board, plaintiff signed a form titled "Statement of Patient Concerning the Findings of a Medical Board" on August 2, 1989. On that form, plaintiff indicated that he had been informed of the fourth medical board's recommendation and he did not desire to submit a statement in rebuttal.

On August 14, 1989, the Record Review Panel (Panel) of the Physical Evaluation Board (PEB) found plaintiff unfit for duty because of physical disability. The diagnosis supporting the finding of unfitness was sarcoidosis. The Panel recommended plaintiff's separation from the Navy with a 10% disability rating under 10 U.S.C. § 1203 (1994).

On August 22, 1989, after being counseled on the Panel's finding, plaintiff signed a form regarding that finding. The form included a counselling certification and listed the options available to plaintiff. In electing his desired course of action, plaintiff also signed his initials beside the first listed option, which stated that he accepted the Panel's finding and did not desire a finding of limited duty status. Plaintiff then became eligible for disability severance pay, and the Panel's finding became the final PEB decision.

Also on August 22, 1989, a doctor examined plaintiff concerning his weight. Due to his chronic obesity and failure to make progress regarding weight control, the doctor indicated that plaintiff "represents a *strong* candidate for adm[inistrative] separation." [5] The doctor referred the matter to plaintiff's command for "approp[riate] adm[inistrative] disposition." [6]

The proceedings of plaintiff's PEB underwent legal review on August 28, 1989. No legal error was found. The next day, the PEB advised the Chief of Naval Personnel that plaintiff: (1) was found to be physically unfit to perform the duties of his office, grade, rank, or rating on active duty; (2) should be assigned a 10% disability rating; and (3) should be permanently separated from the Navy with severance pay. Plaintiff was honorably discharged from the Navy on October 1, 1989. The narrative reason for his separation was physical disability with severance pay, which he received in the amount of $42,818.40.[7]

3. Administrative Record, vol. 1 at 27 (A.R.).

4. *Id.* at 10.

5. *Id.* at 12.

6. *Id.*

7. On April 12, 1993, the VA informed plaintiff that his VA disability compensation award is subject to the recoupment of his disability severance pay and that the VA will withhold $85.00 each month until it has recouped the full $42,-818.40. *See generally* 10 U.S.C. § 1212(c)

On March 10, 1993, Dr. Plate of the Veteran's Administration (VA) Medical Center in Iowa City, Iowa, examined plaintiff. The doctor described plaintiff as "moderately obese" [8] and diagnosed him as having pulmonary sarcoidosis, which was in remission. On March 21, 1994, Dr. Hempel, another doctor at the VA Medical Center, wrote a letter indicating that plaintiff did not have sarcoidosis at that time, nor did he have sarcoidosis at the time of his discharge in 1989. Dr. Hempel also noted that, although he lacked plaintiff's medical records and could not state whether plaintiff may have had sarcoidosis in the 1970s, he did "not believe it was a reason for discharge from the service." [9] Based on the available information, Dr. Hempel stated that a full review of plaintiff's medical records was warranted to determine whether he was inappropriately discharged.

On June 5, 1994, plaintiff submitted an application for correction of his military record to the Board for Correction of Naval Records (BCNR). He resubmitted his application, with additional materials, on August 16, 1994. In the application, plaintiff alleges that he was misdiagnosed with sarcoidosis in 1989 and was therefore wrongfully discharged from the Navy. Plaintiff offered Dr. Hempel's letter in support of his contentions. Plaintiff requested to be either returned to full duty to complete twenty years of service or retired with full back pay and rate.

On January 25, 1995, the VA also received a claim for an increase in plaintiff's 10% disability rating. A VA doctor examined plaintiff on February 21, 1995. The VA doctor concluded that plaintiff "is suffering from chronic intermittent coughing spells of unknown etiology. There is no evidence of sarcoidosis, however [plaintiff] continues to suffer from this chronic cough...." [10] On February 27, 1995, the VA denied plaintiff's request for an increase in disability rating, "as there is no evidence of increased disability." [11] The VA reconsidered plaintiff's re-quested increase on March 3, 1995, and again denied plaintiff an increased evaluation.

The BCNR considered plaintiff's application for correction of his naval record on June 1, 1995. After reviewing plaintiff's available medical history, including Dr. Hempel's letter, the BCNR found no basis to set aside his discharge and denied the application.

Plaintiff filed his complaint in this court on August 21, 1995.[12] Oral argument on defendant's motion was held on April 25, 1996.

*Discussion*

In his complaint, plaintiff claims that: (1) his discharge from the Navy is invalid because it was contrary to the recommendation of the medical board and based on erroneous medical information; (2) the BCNR acted in an arbitrary and capricious manner in denying his application for correction of his naval records; and (3) he is entitled to back pay and retirement benefits based on his wrongful discharge. Plaintiff requests that the court: (1) declare his discharge invalid; (2) order defendant to reimburse him for military active duty back pay; (3) order defendant to reimburse him for back retirement benefits; (4) order defendant to correct his military records; and (5) grant him other relief, including reasonable attorney fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 (1994) (EAJA), *amended by* Federal Reports Elimination & Sunset Act of 1995, Pub.L. No. 104–66, § 1091(b), 109 Stat. 707, 722, *and amended by* Contract With America Advancement Act of 1996, Pub.L. No. 104–121, § 232, 110 Stat. 847, 863.

I. *Jurisdiction*

In its motion for judgment upon the administrative record, defendant first contends that plaintiff, by accepting the Panel's finding rather than requesting a formal hear-

---

(1994); 38 U.S.C. § 1161 (1994); 38 C.F.R. § 3.700(a)(3) (1995).

**8.** A.R., vol. I at 137.

**9.** *Id.* at 111.

**10.** *Id.* at 125.

**11.** *Id.* at 122.

**12.** Although plaintiff titles his initial filing, "Petition," that filing is referenced as "Complaint" throughout the opinion.

ing in 1989, waived any right to now challenge his discharge. This assertion, however, would be better suited to a motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction under RCFC 12(b)(1). *See generally McIntyre v. United States,* 30 Fed.Cl. 207, 212 (1993) (holding that a service member's voluntarily departure from the service precluded jurisdiction in this court). The fact that such a motion is not presently before the court is, however, not material to these proceedings. Indeed, a trial court is obligated "to notice on its own motion the want of its own jurisdiction." *Carter v. United States,* 15 Cl.Ct. 753, 756 (1988) (citing *Hambsch v. United States,* 857 F.2d 763, 765 (Fed.Cir.1988), *cert. denied,* 490 U.S. 1054, 109 S.Ct. 1969, 104 L.Ed.2d 437 (1989)), *see also Hafen v. United States,* 30 Fed.Cl. 470, 472 (1994), *aff'd without op.,* 47 F.3d 1183 (Fed.Cir.1995). The court considers, *sua sponte,* the matter of its jurisdiction over this action. *Hafen,* 30 Fed.Cl. at 472.

■ It is well-settled that the court has jurisdiction over involuntary military discharges. *See, e.g., Sammt v. United States,* 780 F.2d 31, 33 (Fed.Cir.1985); *Bruton v. United States,* 34 Fed.Cl. 347, 352 (1995). By contrast, voluntary departures from military service are beyond the court's jurisdiction. *McIntyre,* 30 Fed.Cl. at 212. In general, resignations and retirements from the military are presumed to be voluntary. *Colon v. United States,* 32 Fed.Cl. 481, 488 (1994). This presumption applies even if a service member, in making a resignation decision is confronted with "a choice of unpleasant alternatives." *Sammt,* 780 F.2d at 33. The presumption is, however, rebuttable in certain circumstances. *Scharf v. Department of Air Force,* 710 F.2d 1572, 1574 (Fed. Cir.1983). Specifically, the presumption may be overcome if a plaintiff can show that: (1) the government caused the plaintiff to resign under the threat of duress or by other coercion; (2) the government misrepresented information relied upon to the plaintiff's detriment; (3) the plaintiff attempted to withdraw the resignation before its effective date; (4)

the plaintiff resigned under time pressure; or (5) the plaintiff was not mentally competent to appreciate the consequences of the resignation decision. *See generally McIntyre,* 30 Fed.Cl. at 211; *Bergman v. United States,* 28 Fed.Cl. 580, 585 (1993); *Christie v. United States,* 518 F.2d 584, 587–88, 207 Ct.Cl. 333 (1975).

■ To fall within the parameters of the duress/coercion exception, which perhaps could apply to the present case, plaintiff must show that: (1) he involuntarily accepted defendant's terms; (2) circumstances permitted no other alternative; and (3) said circumstances were the result of coercive acts by defendant. *Christie,* 518 F.2d at 587 (citing other cases). Because this is not a disjunctive test, a plaintiff must establish all three elements for the exception to apply. *Bergman,* 28 Fed.Cl. at 585–86. In considering the applicability of this exception to a particular case, the court must engage in an objective inquiry into the facts. *Christie,* 518 F.2d at 587. "Thus, a [service member's] subjective evaluation of the scenario is not the yardstick upon which the court will base its determination." *Bergman,* 28 Fed.Cl. at 586.

■ Further, plaintiff contends that he did not knowingly and voluntarily waive any rights and argues that, in accepting the medical discharge, "he simply acquiesced in what he viewed as the inevitable." [13] In support of that assertion, plaintiff claims that he was told that he would have to accept a medical discharge or face disciplinary action due to his failure to lose weight. Relying upon Dr. Hempel's contention that plaintiff's failure to lose weight was exacerbated by the Navy doctors' treatment of his condition with steroids, plaintiff further maintains that the Navy doctors placed him in an "impossible situation." [14] Under the present circumstances, that allegation does not indicate coercion on the part of defendant nor does it render plaintiff's discharge involuntary.

While plaintiff alleges that there was no viable alternative but to agree to a medical discharge, the record indicates that he sim-

---

13. Plaintiff's Resistance to Mot. for J. Upon the A.R. at 29 (Pl.'s Resistance).

14. A.R., vol. I at 28.

ply may have accepted the discharge rather than face the proposed disciplinary action due to his weight. "The fact remains plaintiff *had a choice.* [He] could stand pat and fight. [He] chose not to. Merely because plaintiff was faced with an inherently unpleasant situation in that [his] situation was arguably limited to two unpleasant alternatives does not obviate the voluntariness of [his action]." *Christie,* 518 F.2d at 587; *see also Bruton,* 34 Fed.Cl. at 352 (stating that, in the absence of deception, merely "being threatened with discharge does not vitiate consent to an alternative elective discharge"); *cf. Schultz v. United States,* 810 F.2d 1133, 1136 (Fed.Cir.1987) (holding that to rebut the presumption of voluntariness, a plaintiff must show that he had no choice but to accept the terms of the military department's action). Plaintiff himself acknowledges that he accepted his medical discharge and left the Navy "with out fighting."[15] Thus, it may fairly be said that plaintiff "assessed his chances of challenging the merits of the [proposed disciplinary action regarding his weight] and came to the conclusion that he would be unable to do so." *Bruton,* 34 Fed. Cl. at 353. The voluntariness of this choice is not vitiated by plaintiff's claim that his inability to lose weight resulted from the alleged misdiagnosis of sarcoidosis, because, as discussed subsequently, substantial evidence exists to support the reasonableness of that diagnosis.

Furthermore, the record in the present case shows that several options were available to plaintiff. After the Panel found plaintiff unfit for duty because of physical disability, plaintiff signed a form stating that he had been counseled regarding the Panel's finding and that he accepted that finding. On the face of that form, the options available to plaintiff included: (1) accepting the Panel's finding and requesting or declining limited duty status; (2) declining the finding and requesting a formal PEB hearing; or (3) conditionally accepting the finding with explanation. Plaintiff accepted the Panel's finding, indicated he did not desire a limited duty status finding, and did not request a formal hearing.

No member of the armed service may be separated for physical disability without a formal hearing if the member demands one. 10 U.S.C. § 1214 (1994). In failing to demand such a hearing, plaintiff "foreclosed any right to contest [the PEB's decision]." *Donahue v. United States,* 33 Fed.Cl. 507, 511 (1995). Moreover, by signing the form acknowledging that he had received counselling and accepting the Panel's finding, plaintiff certified that he understood his options and nevertheless agreed to a medical discharge. *See Colon,* 32 Fed.Cl. at 489. This fact alone supports the voluntariness of his discharge. *Id.*

Because plaintiff voluntarily accepted his discharge rather than challenging it at the time it was issued, the court may properly determine that he waived any right to now challenge the discharge decision in a judicial forum and dismiss the complaint. *Maier v. Orr,* 754 F.2d 973, 984 (Fed.Cir.1985). Indeed, had plaintiff requested a formal hearing, he could have challenged the Panel's finding, identified any criticisms he may have had of the medical diagnosis, or obtained a second opinion from another doctor or specialist at that time. *See id.* at 976 n. 2. Instead, plaintiff waited several years before obtaining such an opinion. Nowhere does plaintiff allege that any action of the Navy precluded him, in 1989, from obtaining the medical opinion upon which he now relies. *See id.* at 983 n. 9. The court will not second-guess the properly supported diagnosis rendered by medical authorities at the time of plaintiff's discharge. *Heisig v. United States,* 719 F.2d 1153, 1156 & n. 10 (Fed. Cir.1983) (instructing that the court shall not substitute its judgment for that of a military department when reasonable minds could reach differing conclusions based upon the same evidence).

At oral argument, plaintiff relied upon *Krzeminski v. United States,* 13 Cl.Ct. 430 (1987), to support his contention that any alleged waiver is void because he was pressured into signing any such waiver. That case is, however, readily distinguishable. There, the plaintiff was pressured into sign-

---

15. *Id.* at 88–89.

ing a waiver form shortly after his release from psychiatric evaluation and after informing a legal officer that he did not wish to sign the form because he was unable to concentrate. *Id.* at 438. Here, however, plaintiff does not allege any such coercive circumstances surrounding his acceptance of the Panel's finding.

■■■ Similarly, plaintiff has not demonstrated that the misrepresentation exception should be applied to rebut the presumption that his discharge was voluntary.[16] Here, unlike the situation in *Krzeminski* where the plaintiff signed a second waiver based upon questionable advice from a military attorney, plaintiff has not shown that defendant misrepresented any information upon which he relied to his detriment in accepting the discharge decision. *Id.* Although plaintiff alleges that he was wrongfully discharged based on an erroneous diagnosis of sarcoidosis, that contention alone does not indicate misrepresentation on the part of defendant, especially in light of the fact that substantial evidence exists to support the diagnosis. It is clear that "absent specific misinformation, deception or improper advice offered by a government agency, a resignation will not be found to have been involuntary for the purpose of jurisdiction." *Heaphy v. United States,* 23 Cl.Ct. 697, 702 (1991), *aff'd without op.,* 972 F.2d 1355 (Fed.Cir.1992).

■■■ Also closely related to the misrepresentation exception is plaintiff's assertion that any alleged waiver is void due to a mutual mistake of fact regarding his medical condition. In *Hendrick v. United States,* 150 Ct.Cl. 437, 1960 WL 8520 (1960), a case cited by plaintiff in support of this contention, the court stated that the information relied upon by the various military departments in rendering their decisions as to plaintiff's fitness to serve "was not the result of any examination made, but found its way into the record due to some mistake." *Id.* at 448. Unlike the situation in *Hendrick,* however, the unreliability of plaintiff's record is not obvious. Here, after several physicians examined plaintiff and his medical records, four medical boards diagnosed him as having sarcoido-

sis. The record shows that the four separate medical boards arrived at the same diagnosis based upon substantial evidence. There is no mistake on the part of the military departments concerning plaintiff's medical condition.

The form plaintiff signed regarding the Panel's finding clearly shows that plaintiff had been counseled on that finding and had a choice as to his desired course of action. This fact indicates to the court that plaintiff voluntarily elected to leave the Navy. The court's determination that plaintiff voluntarily departed from military service leaves the court without jurisdiction to consider his claim. *Sammt,* 780 F.2d at 33. In addition, because plaintiff did not challenge his discharge in 1989, the court determines that he waived any right to now contest that discharge in a judicial forum. *Maier,* 754 F.2d at 984.

## II. *Judgment upon the Administrative Record*

*Arguendo,* even if the court were to determine that it has jurisdiction over plaintiff's claim, the case can be resolved on defendant's motion for summary judgment upon the administrative record. Motions for judgment upon the administrative record are treated in accordance with the rules governing motions for summary judgment. RCFC 56.1; *see Clifton v. United States,* 31 Fed.Cl. 593, 596 (1994) (stating that, because the parties relied upon the administrative record, the motion under consideration implicated summary judgment), *aff'd without op.,* 66 F.3d 345 (Fed.Cir.1995). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56; *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). A fact is considered material if it might significantly affect the outcome of the suit under the governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325,

---

**16.** The other exceptions are inapplicable to the present case.

106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the moving party demonstrates an absence of genuine issues of material fact, the burden then shifts to the non-moving party to show that a genuine factual dispute exists. *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1563 (Fed.Cir.1987). Alternatively, if the moving party shows an absence of evidence to support the non-moving party's case, the burden shifts to the non-moving party to proffer such evidence. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553. The court must resolve any doubts over factual issues in favor of the party opposing summary judgment, *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed.Cir. 1985), to whom the benefits of all presumptions and inferences run. *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

## A. The Court's Review of the Administrative Record

In military disability retirement cases, a subcategory of military pay cases, this court's predecessor has held that the court's review need not be limited to the administrative record. *Brown v. United States*, 396 F.2d 989, 990, 184 Ct.Cl. 501 (1968); *Beckham v. United States*, 375 F.2d 782, 785, 179 Ct.Cl. 539, *cert. denied*, 389 U.S. 1011, 88 S.Ct. 583, 19 L.Ed.2d 613 (1967). In non-disability military pay cases, however, the court has tended not to allow the admission of *de novo* evidence. *Long v. United States*, 12 Cl.Ct. 174 (1987), *aff'd without op.*, 868 F.2d 1278 (Fed.Cir.1989). The *Long* court also noted, however, that limited augmentation of the record sometimes may be appropriate in disability retirement cases. *Id.* at 175–76. In *de Cicco v. United States*, 677 F.2d 66, 230 Ct.Cl. 224 (1982), a disability retirement case, the court held that a plaintiff is not entitled to a trial *de novo*, but may introduce *de novo* evidence if it is new to the case not simply new to the court. *Id.* at 70; *see also Bosch v. United States*, 27 Fed.Cl. 250, 262–63 (1992), *aff'd without op.*, 11 F.3d 1070 (Fed.Cir.1993).

In his supplemental affidavit, plaintiff relies upon the statements of Dr. Hempel, just as he did in his application to the BCNR.[17] In addition, plaintiff contends that he had no choice but to accept the medical discharge and that he was not advised regarding the implications of agreeing to that discharge. Plaintiff, however, signed a form that specifically states he was counseled regarding the Panel's finding. Moreover, in his counter-statement of facts denying defendant's proposed finding of fact that he was counseled regarding the Panel's finding, plaintiff simply refers to a form he signed concerning the findings of his fourth medical board. Nowhere in his counter-statement of facts does plaintiff refute that he was counseled regarding the Panel's decision.[18] He simply cites to his supplemental affidavit to contend that he did not understand that limited duty was an option. In the affidavit itself, plaintiff also states that he cannot remember certain writing on the form he signed accepting the Panel's finding and that the form was not explained to him. The writing at issue is, however, obvious on the face of the document, as is the statement that plaintiff was counseled regarding the Panel's finding. Moreover, in a letter to the BCNR regarding his application, plaintiff states that after his request to be placed on limited duty was denied, he accepted his medical discharge and left the Navy "with out fighting."[19] The court has already concluded that plaintiff voluntarily signed the form accepting the Panel's finding after reading it and understanding its contents.

With regard to Dr. Hempel's affidavit, the doctor specifically states that "the salient features of this conclusion [regarding plaintiff's sarcoidosis diagnoses] are outlined in my letter of March 21, 1994 [to the BCNR]."[20] In both the affidavit and letter, Dr. Hempel indicates that, while he could not

---

17. *Id.* at 93–94.

18. *Compare* Defendant's Statement of Facts, ¶ 24 *with* Plaintiff's Counter Statement of Facts, ¶ 1(L).

19. A.R., vol. I at 88–89.

20. Pl.'s Resistance, App. at 2.

offer an opinion as to whether plaintiff had sarcoidosis in the 1970s, he did not believe that sarcoidosis was a reason for plaintiff's discharge in 1989. This contention, which is the crux of Dr. Hempel's argument, was available to the BCNR at the time of its review. Although Dr. Hempel's supplemental affidavit goes into greater detail regarding the effect of steroid treatment upon a person's weight, his letter to the BCNR also indicated that plaintiff gained a significant amount of weight while on steroids. Dr. Hempel's evidence therefore is not new to the case.[21] Nevertheless, in light of *Beckham's* instruction that the court must ask whether the military department's decision is supported by substantial evidence "when compared with all available evidence—that is both the record and the *de novo* evidence," 375 F.2d at 785, the court considers all available evidence in reviewing defendant's motion.[22]

B. *The Navy's Decision to Discharge Plaintiff and the BCNR's Decision Upholding His Discharge Are Supported by Substantial Evidence*

 Claims for military pay and allowances are actionable in this court under the Tucker Act, 28 U.S.C. § 1491(a)(1) (1994). Although judicial review of military service decisions with monetary consequences is available, "responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province." *Heisig,* 719 F.2d at 1156 & n. 10 (citing *Orloff v. Willoughby,* 345 U.S. 83, 93–94, 73 S.Ct. 534, 539–40, 97 L.Ed. 842 (1953)). The court will not substitute its judgment for that of a military department in cases where reasonable minds could reach differing conclusions based upon the same evidence. *Id.; see also*

*Sanders v. United States,* 594 F.2d 804, 813–14, 219 Ct.Cl. 285 (1979). The court's review of a military department's decision is therefore limited to determining whether the action was "arbitrary, capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced." *Clayton v. United States,* 225 Ct.Cl. 593, 595, 1980 WL 13179 (1980); *see also Heisig,* 719 F.2d at 1156. The court must also "consider whether the decision was based on the relevant factors and whether there has been a clear error of judgment." *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974); *Robbins v. United States,* 29 Fed.Cl. 717, 725 (1993). In addition, for the court to reverse the decision of a military department regarding a member's fitness for duty, the evidence that the decision was arbitrary or capricious, or unsupported by substantial evidence must be clear and convincing. *Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed.Cir.), *cert. denied,* 479 U.S. 853, 107 S.Ct. 188, 93 L.Ed.2d 121 (1986). Case law makes clear that the court should apply this standard when reviewing decisions of military correction boards, such as the BCNR. *See, e.g., Heisig,* 719 F.2d at 1156; *Bosch,* 27 Fed.Cl. at 264; *de Cicco,* 677 F.2d at 70.

 It is also important to note that the court does not sit as a "super correction board." *Skinner v. United States,* 594 F.2d 824, 829, 219 Ct.Cl. 322 (1979). Thus, the court should not substitute its judgment for that of the military department or correction board. *Wronke,* 787 F.2d at 1576. Nor should the court reweigh medical evidence or the credibility of witnesses. *de Cicco,* 677

21. Similarly, the letters of other doctors that are attached to plaintiff's affidavit are all dated prior to the BCNR's review of plaintiff's application. Plaintiff even references Dr. Wilson's conclusions in a letter to the BCNR. A.R., vol. I at 88.

22. In his motion to consider the attached affidavit, plaintiff asks the court to consider an additional affidavit and its attached exhibits. The relevance of these documents to the present case

is unclear in that the affidavit simply "appears to make claims of reprisal for whistleblowing, allegations not mentioned in [plaintiff's] complaint." Defendant's Opp. to Pl.'s Mot. to Consider Aff. at 1. Moreover, the affidavit and attached documents present no information to indicate that the Navy or BCNR decisions were arbitrary and capricious or unsupported by substantial evidence.

F.2d at 70. In military personnel actions, there is a "strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." *Sanders,* 594 F.2d at 813.

### 1. *The Navy's Decision*

■ Plaintiff claims that the Navy's discharge decision was not based upon "accepted medical principles," as is required by 10 U.S.C. § 1202 (1994). In support of this contention, plaintiff relies upon Dr. Hempel's supplemental affidavit, as well as statements of various other doctors. At a minimum, plaintiff claims that these statements create a genuine issue of material fact as to "whether based upon accepted medical principles, [plaintiff] at discharge suffered from a disability which is or may be of a permanent nature." [23] As previously noted, the court's review of military disability decisions is quite limited. The court will not intervene as long as substantial evidence exists to support the Navy's decision.

The military disability evaluation system seeks to maintain a physically fit and combat ready armed service. Disability Evaluation Manual, SECNAVINST 1850.4B, at II–1 (1987). "A [service] member is 'unfit because of physical disability' when he or she is unable, because of disease or injury, to perform the duties of his or her office, grade, rank, or rating in such a manner as to reasonably fulfill the purpose of his employment on active duty." *Id.* at II–7. During the course of plaintiff's service in the Navy, four separate medical boards diagnosed him with sarcoidosis. The last two medical boards, each of which was composed of two physicians, determined that he was unfit for full duty. Prior to his fourth medical board, a physician evaluated plaintiff on several occasions and conducted numerous medical tests upon him. The fourth medical board: (1) reviewed plaintiff's medical history, physical examination, and laboratory results; (2) diagnosed him as having sarcoidosis; and (3)

concluded that, although he was not fit for full duty, he was fit for a period of limited duty to complete twenty years of service. This conclusion shows that the fourth medical board found plaintiff unfit for full duty. The Panel concurred in that finding and, in its discretion, recommended plaintiff's separation from the Navy with a 10% disability rating. Because four separate medical boards diagnosed plaintiff with sarcoidosis, and the two most recent boards found him unfit for full duty, substantial evidence exists to support the Panel's decision. *Cf. Orloff,* 345 U.S. at 93–94, 73 S.Ct. at 539–40 (holding that fitness determinations are within the discretion of the military). Thus, plaintiff's discharge was not wrongful.

Further, by simply presenting conclusory statements from Dr. Hempel that no reasonable doctor could have concluded that plaintiff suffered sarcoidosis justifying a medical discharge in 1989, plaintiff has not shown by clear and convincing evidence that the four medical boards that examined him based their decisions on anything other than "accepted medical principles." The court will not substitute its judgment for that of a military department where reasonable minds could reach differing conclusions based upon the same evidence. *Heisig,* 719 F.2d at 1156. The same holds true regarding Dr. Hempel's statement that plaintiff did not suffer from sarcoidosis at the time of his discharge.

### 2. *The BCNR's Decision*

■ On June 1, 1995, when the BCNR reviewed plaintiff's application for correction of his naval record, the BCNR had before it: (1) plaintiff's available prior medical records; (2) his post-discharge VA medical history; and (3) Dr. Hempel's letter in which the doctor indicated that plaintiff did not presently have sarcoidosis and suggested that plaintiff did not have sarcoidosis at the time of his discharge. Based upon that information, it was reasonable for the BCNR to conclude that plaintiff's discharge was not wrongful.

---

**23.** Pl.'s Resistance at 15.

As previously stated, Dr. Hempel's supplemental affidavit simply reiterates the concerns expressed in his letter to the BCNR. Dr. Hempel's supplemental statements not only are repetitive, but also do nothing to invalidate or negate plaintiff's prior medical history.[24] Moreover, the record shows that the BCNR issued its decision with full knowledge of Dr. Hempel's concerns, and, within its discretion, reached a different conclusion. Mindful that "the field of medical diagnosis is perhaps a paradigm example of an area in which reasonable minds can differ," *Kirwin v. United States,* 23 Cl.Ct. 497, 505 (1991), the court must defer to the BCNR's decision, which was based on substantial evidence including the findings of four separate medical boards, two of which determined that plaintiff was unfit for full duty.

Plaintiff also makes much of the fact that the Navy doctor who treated him in 1989 expressed concerns that there might be something more to his condition than simply sarcoidosis. These statements alone, however, do nothing to invalidate plaintiff's four sarcoidosis diagnoses. Furthermore, plaintiff's fourth medical board, the Panel, the PEB, and the BCNR had the doctor's statements before them when making their respective decisions. Plaintiff has presented no evidence to suggest that these military departments did not weigh those statements against all other available evidence prior to rendering their decisions. The court will not now reweigh that evidence, where substantial evidence supports the conclusions reached by the military departments. *de Cicco,* 677 F.2d at 70. Moreover, plaintiff has not rebutted the strong presumption that "administrators of the military ... discharge their duties correctly, lawfully, and in good faith." *Sanders,* 594 F.2d at 814. The court presumes that the deciding officials properly determined, and then upheld the determination, that plaintiff should be discharged for reasons of physical disability.

In addition, the court agrees with defendant that the key issue in this case is not whether plaintiff did in fact have sarcoidosis at the time of his discharge, but rather his medical condition at that time. Under applicable naval guidelines, the important question in determining whether plaintiff was "unfit because of physical disability" was whether plaintiff was "unable, because of disease or injury, to perform the duties of his ... office, grade, rank, or rating in such a manner as to reasonably fulfill the purpose of his employment on active duty." SECNAVINST 1850.4B, at II–7. Whatever the etiology of plaintiff's condition, his 1989 medical board, reviewing Panel, and PEB found that his condition rendered him unfit for full active duty. Indeed, in a letter that accompanied his application to the BCNR, plaintiff stated that he had lost four jobs since his discharge "due to what I believed to be sarcoidosis."[25] In that regard, plaintiff indicated that he "would have a long period of chronic coughing spells which would last three to six months subsequently losing [his] voice for weeks at a time. The severity of these coughing spells would sometimes cause [him] to black out."[26] This admission lends additional support to the reasonableness of the Navy's decision to discharge plaintiff for reasons of physical disability, and the BCNR's refusal to disturb that discharge. *Cf. Taylor v. United States,* 33 Fed.Cl. 54, 60–61 (1995) (involving a plaintiff's admission that lent support to a BCNR decision).

Finally, plaintiff's request for attorney fees is denied. For purposes of the EAJA, plaintiff is not a "prevailing party" and is not entitled to such fees. *See Donahue,* 33 Fed. Cl. at 512.

### Conclusion

For the above reasons, the court determines that it lacks jurisdiction over plaintiff's

---

**24.** The same can be said regarding the letters of other doctors that plaintiff attaches to his resistance to defendant's motion for judgment upon the administrative record.

**25.** A.R., vol. I at 88.

**26.** *Id.*

claim.[27] Accordingly, the Clerk is directed to dismiss the complaint. No costs.

27. Assuming, *arguendo,* that the court has jurisdiction, defendant's motion for summary judgment upon the administrative record is granted.