Harry J. McINTYRE, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 90–544C.

United States Court of Federal Claims.

Dec. 3, 1993.

Richard L. Swick, Washington, DC, Atty. of Record, for plaintiff.

Donna C. Maizel, Washington, DC, with whom were Asst. Atty. Gen. Frank W. Hunger, Director David M. Cohen, and Asst. Director Anthony H. Anikeeff, for defendant.

## OPINION

LYDON, Senior Judge:

In this case, Harry J. McIntyre seeks correction of his service records and back pay. Specifically, he asks that the Court of Federal Claims order correction of his Army records to show a retroactive restoration to active duty for a three-year period after he obtained an honorable discharge from the Army. Having been barred by the Army from reenlisting, McIntyre sought an immediate discharge from the service, which was granted. Suggesting that this request was a voluntary retirement, the defendant has filed a motion to dismiss for lack of jurisdiction on the grounds that the court has no jurisdiction to review the determinations of a Board for Correction of Military Records if plaintiff has voluntarily separated himself. In the alternative, defendant argues that no genuine issue of fact prevents summary judgment from being entered on its behalf. Plaintiff has cross-moved for summary judgment. Having reviewed the parties' submissions and having heard oral argument, the court concludes that it has no jurisdiction over this matter and that summary judgment in this case would in any event be appropriate.

## BACKGROUND

Harry J. McIntyre (McIntyre) enlisted for active duty in the United States Army on June 10, 1968. Over the next ten years he was promoted in turn, eventually attaining the grade of Staff Sergeant (E6) on October 16, 1978. McIntyre re-enlisted on August 7, 1981 for a term of four years; therefore, the date of his expiration of term of service (ETS) was August 7, 1985. However, on February 27, 1985, before his expected ETS came to pass, McIntyre re-enlisted for a new term of three years, setting his expected ETS as February 27, 1988. Had he been permitted to serve through this enlistment term, he would have had 19 years, 8 months, and 16 days of active duty service. This would have permitted him to extend his enlistment to complete 20 years of active service, making him eligible for retirement with 20 years service. But, soon after his final re-enlistment in a letter dated March 5, 1985, the Army barred McIntyre from any future

re-enlistment under the terms of its Qualitative Management Program (QMP).

The Court of Appeals for the Federal Circuit has recently recognized once again that it is a "premise[] of law [that] ... no one has a right to enlist or reenlist in the armed forces, unless specially given one by statute or regulation.... Accordingly, the Secretary has prescribed Army regulations setting out the Qualitative Management Program (QMP) by which the Army determines whom it will reenlist." *Dodson v. Dep't of Army,* 988 F.2d 1199, 1203–04 (Fed.Cir.1993). The QMP

> is [a.] based on the premise that reenlistment is a privilege for those whose performance, conduct, attitude, and potential for advancement meet Army standards. It is designed to—
>
> (1) Enhance quality of the career enlisted force.
>
> (2) Selectively retain the best qualified soldiers to 30 years of active duty.
>
> (3) Deny reenlistment to nonprogressive and nonproductive soldiers.
>
> (4) Encourage soldiers to maintain their eligibility for further service.
>
> (b) Bars to reenlistment imposed under the provisions of the QMP are not intended to be rehabilitative in nature. They are designed to deny reenlistment to soldiers who are identified through the qualitative screening program as failing to meet Army standards.

Army Regulation (AR) 601–280 ¶ 10–2.

As indicated above, McIntyre was promoted to E6 in October 1978. At the time McIntyre was entering his seventh year as an E6, the Army's Sergeant First Class (E7) Promotion Selection Board was convened on October 10, 1984 to determine which soldiers in grade E6 should be promoted to grade E7. Pursuant to the QMP, the Board was also ordered to consider soldiers for a bar to reenlistment and separation. The Board recommended that McIntyre be selected for QMP. The Board considered matters in McIntyre's official military personnel file (OMPF), which is the official record of a member's military service. An OMPF contains three subfiles: (1) a performance fiche, which is used for filing performance, commendatory, and disciplinary data and which is routinely used by career managers and selection boards; (2) a service fiche, in which general information and service data are filed and which are given to selection boards upon request; and (3) a restricted fiche, the section for historical data that may normally be improper for examination by selection boards or career managers. It appears that the Selection Boards had the opportunity to examine only the performance and restricted fiches of McIntyre's OMPF.

The March 5 letter informed McIntyre that the QMP bar was primarily based on particular documents in his OMPF, specifically, a record of a summary court-martial conviction, eleven records of nonjudicial punishment (NJP) proceedings,[1] and three Enlisted Evaluation Reports (EERs)[2] reflecting below-average performance. Enlisted persons receiving a bar to reenlistment are presented with a choice that is officially represented on a "Statement of Option." Initially, the enlisted person must indicate whether or not he intends to appeal the bar to reenlist-

---

1. Pursuant to 10 U.S.C. § 815, the Army may impose NJPs for minor offenses when the individual elects to accept nonjudicial punishment in lieu of trial by court-martial. McIntyre's NJPs were imposed during the period between November 14, 1968 and February 9, 1979 for the following offenses: absence without leave/failure to repair (nine instances); missing movement (one offense); and disobeying officers' orders (two offenses). He was also convicted by summary court-martial on February 12, 1970 for disobeying an order and being in an improper uniform. As defendant's counsel characterized his record at oral argument, McIntyre had had NJPs imposed during eleven of his seventeen years in military service.

2. Among the materials in an enlisted person's OMPF are his Enlisted Evaluation Reports (EERs). Use of the EER is intended "to support the Army's personnel management programs and the career development of individual soldiers. It influences the soldier's career objectives, measures the quality of the NCO corps, and largely determines the senior leadership of the Army." AR 623–205, ¶ 1–4. As indicated by these regulations, the QMP program is used to advance superior soldiers through the ranks and to deny inferior soldiers such an opportunity.

ment. On a Statement of Option signed on May 22, 1985, McIntyre indicated he would not file an appeal. Those persons who state that they will not file an appeal are then asked whether they will complete their remaining term of enlistment or will instead request an immediate discharge. Even if an enlisted person chooses to complete his remaining term of enlistment, under the bar to reenlistment the Army retains the option of initiating separation proceedings against the soldier, producing the possibility that the soldier may in any event be separated prior to his expected ETS; nevertheless, it appears that no separation proceeding could occur until at least eighteen months after the QMP bar had elapsed. McIntyre asked for immediate discharge. Along with his request for an immediate discharge, he signed a statement relating that his request for separation prior to his ETS was for his own convenience.

On May 29, 1985, McIntyre signed a request for personnel action seeking discharge from the Army in accordance with Army Regulation 635–200. Paragraph 16–5a(2) provides that the enlisted person's request for early separation following a bar to reenlistment "will include the following statement: 'I understand that I am being separated for my own convenience.... I also understand that once separated I will not be permitted to reenlist at a later date.'" McIntyre, who was stationed in Korea at the time he sought discharge, asked for a discharge date of June 15, 1985, almost three years before his expected ETS date, February 27, 1988. The Army gave McIntyre an honorable discharge on June 18, 1985.

On October 4, 1985, McIntyre petitioned the Army Board for Correction of Military Records (ABCMR) pursuant to 10 U.S.C. § 1552 and AR 15–185, seeking removal of those records of nonjudicial punishment on the grounds that these records should have been removed from his OMPF two years after their imposition, and that the Selection Board improperly considered them. To help it determine whether the NJP records were properly considered, on September 16, 1986 the ABCMR requested advisory opinions from the Office of the Judge Advocate Gen-

eral of the Department of the Army. The Office's Criminal Law Division rendered its advisory opinion on October 29, 1986, stating that the original records of the NJPs were properly filed in McIntyre's OMPF and that records of NJPs presently filed in either the performance or restricted portions of the OMPF should properly remain there. On the following day, the Office's Administrative Law Division rendered an advisory opinion to the ABCMR stating that the QMP bar was imposed in accordance with the regulatory provisions in effect at the time and that the NJPs had been properly considered by the Selection Board as a basis for recommending the QMP bar.

Accordingly, on March 18, 1987, the ABCMR denied McIntyre's application for correction of his records. In the four-page memorandum of consideration it issued, the ABCMR discussed the facts of the case, the applicable regulatory procedures, the Office of the Judge Advocate's opinions, and its reasons for denying McIntyre's petition. Specifically, the ABCMR found no regulatory authority to support the proposition that the records should have been removed from the OMPF, remarking that "[h]is disciplinary record and his weak EER file were ample justification for his bar to reenlistment."

McIntyre filed his complaint in this court on June 19, 1990, seeking correction of his Army records to show his retroactive restoration to active duty, effective June 18, 1985, and that he had served on active duty from that date until June 30, 1988 (his original ETS). Additionally, McIntyre asked that all documentation relating to his June 18, 1985 discharge be removed from his service records, and requested back pay.

Proceedings in this court were halted at McIntyre's request on October 19, 1990 so he could seek a reconsideration of the ABCMR's denial of his petition. In his request for reconsideration, received by the ABCMR on February 14, 1991, McIntyre asked that his discharge be set aside and that all references to the discharge be expunged from his records. Departing somewhat from the tenor of his initial petition, he requested that his records be corrected to indicate that he served on active duty from June 18, 1985 until Au-

gust 31, 1989, and that he retired with twenty years service on that date. The new request alleged that McIntyre had not been considered for retention based upon a substantially complete and fair record because his citations showing award of the Bronze Star Medal and the Combat Infantryman Badge were omitted from the OMPF, and that records of NJPs were improperly included in the OMPF. In addition, he suggested that the Selection Board had not considered his more recent EERs which demonstrated steadily improving performance.

The ABCMR denied McIntyre's second request for reconsideration on December 2, 1992. The ABCMR considered the additional materials submitted, applicable regulations, and his OMPF, noting in particular that although McIntyre's citations for being awarded the Bronze Star and the Combat Infantryman Badge were not in his OMPF, other documents in the OMPF referred to these honors, making the Selection Board aware of them at the time its review was conducted.

The order suspending proceedings in this court was vacated on January 13, 1993. In lieu of an answer, defendant filed its motion to dismiss for lack of jurisdiction and in the alternative for summary judgment. Plaintiff has filed a cross-motion for summary judgment.

### DISCUSSION

I. "Voluntary Retirement" and Jurisdiction

■ Citing to *Sammt v. United States*, 780 F.2d 31 (Fed.Cir.1985), defendant argues that because McIntyre voluntarily requested separation from the Army, the court lacks jurisdiction in this case. Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction to rule on claims before it, the court shall dismiss the action. RCFC 12(h)(3). Consequently, the threshold issue becomes the character of McIntyre's departure from the service.

■ Determination of whether a specific resignation or retirement qualifies as voluntary requires an examination of all the facts and circumstances. *Covington v. DHHS*, 750 F.2d 937, 941 (Fed.Cir.1984); *Bergman v.*

*United States*, 28 Fed.Cl. 580, 585 (1993). The focus of this inquiry is whether the plaintiff exercised a free choice in making the resignation or retirement decision. Resignations are presumed to be voluntary. *Bergman*, 28 Fed.Cl. at 585. This presumption of voluntariness is not rebutted if the plaintiff has had to choose between two unattractive alternatives. *Sammt*, 780 F.2d at 33. The presumption of voluntariness, however, can be rebutted by demonstrating that the government caused plaintiff to resign under threat of duress or by other coercion, by demonstrating that the government intentionally misrepresented information relied on to the plaintiff's detriment, or by showing that plaintiff tried to withdraw his resignation before its effective date, that plaintiff resigned under time pressures, or that plaintiff was not sufficiently competent to appreciate the consequences of his decision. *See generally Bergman*, 28 Fed.Cl. at 585; *Christie v. United States*, 207 Ct.Cl. 333, 337–341, 518 F.2d 584, 587–88 (1975).

■ An examination of the ABCMR records submitted to the court indicates that McIntyre's resignation was the product of a volitional choice. The court is aware that if McIntyre had not been subject to a QMP bar to reenlistment he would have remained in the service and continued his career. In his submissions, McIntyre seems to suggest that after the QMP bar was imposed, he was given the choice between staying in the Army until his ETS, or resigning early to close the separation process more quickly than otherwise. In his words, his "request for immediate discharge amounted to no more than an accommodation between him and the Army to schedule the date of his discharge."

With this argument, McIntyre suggests that his resignation had to have been involuntary because he was merely speeding along the single choice available to him, to leave the service. The "Statement of Option" he signed, however, indicates that after the bar to reenlistment had been imposed, he had three options available to him. One option was to indicate that he would appeal the bar to reenlistment. In lieu of choosing to submit an appeal, McIntyre could have

chosen instead to sign a statement that he would not submit an appeal. This choice leads to the second and third options. The second option would be not to submit an appeal and complete one's remaining term of enlistment and take no further action.[3] The third option McIntyre had available to him was to state that no appeal would be filed and to then request an immediate discharge. As indicated previously, McIntyre chose this third option.

Nothing in the record or any of McIntyre's submissions indicates that his resignation, whose character is reflected in the "Statement of Option," is anything but voluntary. Had McIntyre demonstrated that his resignation was the product of duress (or other such intervening factor) the court could assume jurisdiction. McIntyre fails to show any of these factors influenced his decision. He argues that the jurisdictional rule governing *Sammt* and *Heaphy v. United States*, 23 Cl.Ct. 697 (1991), *aff'd*, 972 F.2d 1355 (Fed. Cir.1992), should not govern the court's decision because in those cases the plaintiff "made a decision which was ultimately beneficial in that it led to his retirement." Sammt and Heaphy could only obtain retirement benefits because they had *already* become eligible for them at the time of their separation. What happens to the plaintiff after he leaves the service is irrelevant to the threshold question of whether plaintiff left the service on his own. McIntyre then suggests that his separation was not voluntary because he contacted his congressman and petitioned the ABCMR soon thereafter, but clearly this does not make his separation an involuntary act, particularly in light of his declining to submit an appeal while still in the Army. In this regard the court draws a parallel to *Christie v. United States,* in which the Court of Claims noted that although

> it is possible plaintiff, herself, perceived no viable alternative but to tender her resignation, the record evidence supports CSC's finding that plaintiff chose to resign and accept discontinued service retirement rather than challenge the validity of her proposed discharge for cause. The fact remains, plaintiff *had a choice.* She could stand pat and fight. She chose not to. Merely because plaintiff was faced with an inherently unpleasant situation in that her choice was arguably limited to two unpleasant alternatives does not obviate the voluntariness of her resignation.

*Christie v. United States,* 207 Ct.Cl. 333, 338, 518 F.2d 584, 587 (1975). *See also Bergman,* 28 Fed.Cl. at 587, citing *Griessenauer v. Dep't of Energy,* 754 F.2d 361, 364 (Fed.Cir. 1985) ("the probability of removal does not convert a voluntary resignation into an involuntary one"). Accordingly, because court finds no reason to conclude that McIntyre's departure from the service was anything but an exercise of free choice, the court lacks jurisdiction over the claims asserted in this case.[4]

---

**3.** Specifically, DA Form 4941–R gave McIntyre the option of signing a statement that he would not submit an appeal and stating also that: "I intend to complete my remaining term of enlistment and will take no further action. I understand that I will be processed for separation 18 months after the date of the bar and I may be separated prior to my current ETS." If McIntyre had chosen what the court characterizes as the "second" of the three available options, he could have remained in the Army and been separated no sooner than September 5, 1986. Had McIntyre resisted the QMP bar and stayed in the Army until separated, the court would be more inclined to view his departure from the Army as involuntary.

**4.** The court finds little to disagree with the legal arguments made by plaintiff in his reply brief that prejudicial errors made by a corrections board that are left uncorrected by a reviewing court rise to the level of legal error and injustice.

Quoting *Sanders v. United States,* 219 Ct.Cl. 285, 307–08, 594 F.2d 804, 816 (1979), plaintiff states that:

> [M]aterial factual errors and prejudicial injustices which are not corrected rise to the level of legal error and that the refusal to correct them is in derogation of the mandate of the board's enabling statutes and, where pay is lost and claimed, 10 U.S.C. § 1552, 37 U.S.C. § 204, and 28 U.S.C. § 1491 enable us to review and right the wrong.

This statement, though, fails to help plaintiff's cause: with this language the Court of Claims reaffirmed that it had an obligation to correct injustices "where pay is lost and claimed." This is the essence of the rule in *Sammt.* When a person voluntarily separates himself from his appointment, he has no legal right to money that would have been owed to him had he stayed in his position. *Cf. United States v. Testan,* 424 U.S. 392, 402, 96 S.Ct. 948, 955, 47 L.Ed.2d 114 (1976):

## II. Summary Judgment

### A. Standards for Review

█ Even if the court were to decide that it had jurisdiction over this case, the case could be appropriately resolved by summary judgment. Summary judgment is the procedural mechanism by which this court reviews administrative decisions and the supporting record. RCFC 56.1. "In military pay matters, the court reviews a plaintiff's case 'through the prism of a correction board.' " *Henson v. United States,* 27 Fed.Cl. 581, 592 (1993) (quoting *Cohn v. United States,* 15 Cl.Ct. 778, 779 (1988)). "To overturn the Board's decision, plaintiff must prove by cogent and convincing evidence (1) a material and legal error or injustice in the correction board proceeding and (2) an adequate nexus or link between the error or injustice and the adverse action." *Id.* (citing *Hary v. United States,* 223 Ct.Cl. 10, 15, 618 F.2d 704, 706 (1980)). Plaintiff has the burden of showing by cogent and clear evidence that the correction board's decision was the product of a material legal error or injustice. *Id.*

█ The scope of review is narrow in this case not just because such a focus is a traditional feature of reviewing decisions reached in administrative board proceedings, but in particular because "[d]etermining who is fit or unfit to serve in the armed forces is not a function of the judiciary." *Dougharty v. United States,* 27 Fed.Cl. 436, 439 (1993) (citing *Orloff v. Willoughby,* 345 U.S. 83, 93–94, 73 S.Ct. 534, 539–540, 97 L.Ed. 842 (1953)). Following this established mandate, the court must determine whether the correction board's decision to not grant plaintiff relief was arbitrary, capricious, in bad faith, unsupported by substantial evidence or contrary to law, regulation or published procedure. Its decision will be set aside as "arbitrary and capricious only if it was not based on relevant factors, lacked a rational basis or represents a clear error in judgment." *Wyatt v. United States,* 23 Cl.Ct. 314, 320 (1991) (citing *Bowman Transp. v. Arkansas–Best Freight Sys.,* 419 U.S. 281, 285, 95 S.Ct.

438, 441, 42 L.Ed.2d 447 (1974)). Further, in reviewing the proceedings below the court will presume that "administrators of the military, like other public officers, discharge their duties in good faith." *Sanders v. United States,* 219 Ct.Cl. 285, 302, 594 F.2d 804, 813 (1979). To overcome this rebuttable presumption of good faith, plaintiff must present "well-nigh irrefragable proof." *Anderson v. United States,* 22 Cl.Ct. 178, 183 (1990) (quoting *Knotts v. United States,* 128 Ct.Cl. 489, 492, 121 F.Supp. 630, 631 (1954)).

### B. Specific Contentions of Error

McIntyre's motion for summary judgment essentially posits four errors made by the Board that would compel his QMP bar to be overturned. None of these asserted material errors or injustices, which the court shall address individually, satisfies the demanding standard of proof that must be met to overturn an ABCMR decision.

#### 1. Proper Placement of Records in McIntyre's OMPF

█ With respect to records of the ten NJPs and one summary court martial he received between 1968 and 1979, McIntyre argues that these records should not have been considered by the QMP board and used to support his bar to reenlistment because these incidents were minor infractions and that there was no intention that these Article 15 punishments would lead to his separation from the service years later. McIntyre directs the court's attention to AR 27–10, ¶ 3–43, which he asserts stands for the proposition that a soldier has a "right to have the records of Article 15 punishment transferred from his performance fiche upon a determination that the punishment had served the purpose intended at the time in was imposed." This regulation, however, does not say that records of one's NJPs are ever automatically transferred from the performance fiche of an OMPF to the restricted fiche, making them unavailable for review by a QMP board; paragraph 3–43b(1) states that "[e]nlisted members ... *may* request

There is no claim here that either respondent has been denied the benefit of the position to which he has been appointed. The claim, instead, is that each had been denied the benefit

of a position to which he should have been, but was not, appointed. The established rule is that *one is not entitled to the benefit of a position until he has been duly appointed to it.*

the transfer of a record of nonjudicial punishment from the performance fiche of their OMPF to the restricted fiche under the provisions of this regulation. To support the request, the person must submit substantive evidence that the intended purpose of Article 15 has been served . . . ." It does not appear from the record that McIntyre made such a request for a transfer of records at any time before he was separated from the Army. In addition, there does not appear to be any question that the records of these eleven Article 15 punishments were correctly filed in McIntyre's OMPF. This was the conclusion of the Criminal Law Division of the Office of the Judge Advocate General, which in a comment to the ABCMR filed on October 29, 1986 stated that pursuant to AR 27–10, ¶ 3–41a, the records of the various NJPs were properly filed, and thus were available to the QMP board for their consideration. Accordingly, the record demonstrates that this allegation of material error or injustice is without merit.

### 2. Bronze Star Medal and Combat Infantry Badge

 As further evidence that the QMP board did not have before it a substantially complete and fair record of his service, McIntyre notes that the records reviewed by the board did not indicate that he had been awarded the Bronze Star Medal and the Combat Infantry Badge in 1969 for achievements during the Vietnam War. The thrust of McIntyre's argument on this point is that the QMP board, which had before it records of Article 15 punishments imposed during his service in Vietnam, did not have before it records of his "positive" accomplishments recognized by the Army during this same period. The court acknowledges the appeal of the suggestion that a complete record of an enlisted person's performance would include recognition of both favorable and unfavorable accomplishments. It does, however, appear from the record that these two

awards were mentioned in his OMPF: according to the ABCMR's Memorandum of Consideration, the awards are noted on each of two official discharge forms (DD 214s), filed at the end of McIntyre's earlier terms of enlistment.

Still, even if the court were to assume that these awards were not sufficiently highlighted in McIntyre's OMPF, the conclusion that McIntyre would not have been separated is not necessarily compelled. The court does not have the power to rewrite the rules used in the Army's Qualitative Management Program. The court can find that a QMP separation was unjust only if it identifies a material error or injustice which in turn is the cause of the enlisted person's separation from the Army.[5] As mentioned earlier, the object of the QMP is to selectively retain the most qualified soldiers in the Army and deny reenlistment to the rest. From this purpose follows the QMP's emphasis on EERs, which track the career development of individual soldiers. Even if an omission of these two awards would have been erroneous, an examination of the record does not indicate such an omission would have caused the QMP board to recommend that McIntyre be separated.

### 3. EER Dated September 1975—November 1975

 McIntyre asserts that an additional reason that he was chosen for QMP separation was the consideration by the QMP board of an EER purporting to evaluate a period between September 1975 and November 1975. He states that this EER was located in his records in a place that would lead the QMP board to believe that the report was issued during a time in which he was an E6 (plaintiff was an E5 during 1975), and thus represented a serious regression in his performance. The report does indicate it is evaluating McIntyre's performance during a certain period in 1975, as well as indicating

---

5. With respect to whether the "lack of emphasis" on these awards was a material error, the court draws its attention to AR 601–280, ch. 10, § 11, which provides that a soldier may appeal his bar to reenlistment based on a material error in his record. Paragraph 10–8b(2)(k) provides that a material error has occurred when an award of a

decoration for valor or an Army Achievement Medal of higher award for meritorious achievement was not recorded on the performance fiche or qualification record. It appears that the two awards won by McIntyre, which support his allegation of error, were in fact "recorded on the performance fiche."

that the soldier being rated is a "SSG E–6". Obviously, this is incongruous, but is it material error that affected the QMP separation and subsequent denial of relief by the ABCMR? McIntyre argues that because the report and its very low score appear in his records between a 1980 and a 1981 report, the board took them to be evidence of a downturn in performance. The placement of a report in an enlisted person's file, though, does not mean that the report was not considered in its proper chronological context. As noted by the ABCMR in its Memorandum of Consideration, the QMP board had before it written instructions not to make any inference on out of order documents as they are filed in the order they are received. In the absence of evidence that the board disobeyed governing regulations, the court will operate under the assumption that military selection boards do in fact follow the instructions given to them. *See Sanders,* 219 Ct.Cl. at 302, 594 F.2d at 813 ("Strong policies compel the court to allow the widest possible latitude to the armed services in their administration of personnel matters."). McIntyre further suggests that because this EER reports a period covered by another EER (which spans the period from August 1975 to October 1976), the EER in issue was apparently rendered in error; however, McIntyre has presented no cogent and convincing evidence supporting this assertion. The September–November EER evaluated his performance as a "NCO in charge" of a correctional facility. He has not pointed to anything in his records that indicates he did not in fact hold this position (and therefore would have been evaluated in it) during a period in 1975.

### 4. Estoppel

Finally, McIntyre argues in his motion for summary judgment that the Army should be estopped from imposing the QMP bar to reenlistment. Essentially, McIntyre states that because he was allowed to reenlist twice in the Army with various Article 15 punishments on his record and because he was promoted with all but one of the Article 15s on his record, the Army should be precluded from using the Article 15 punishments at a later time as grounds for separation. McIntyre cites no authority for the proposition that the Army should be estopped from subjecting him to QMP separation.[6] In fact, the goals of the QMP, which McIntyre does not challenge on their face, indicate why the NJPs may be "excused" in an early part of a soldier's career but still may be cause for separation later. The QMP was designed to advance productive and progressive soldiers and deny reenlistment to nonprogressive ones, thereby thinning the ranks to develop a smaller, more elite contingent of enlisted leaders. Considering this goal, it is apparent why the NJPs might gain added importance later in a soldier's career—to determine who shall be advanced into the leadership ranks, career trends are identified, and in this determination the burdens of NJPs weigh heavier than they may have before. Accordingly, the court cannot find any error or injustice presented by this particular circumstance.

### *CONCLUSION*

Plaintiff has failed to demonstrate convincingly that any of the ABCMR's actions in sustaining the QMP bar to reenlistment was a material legal error or injustice that com-

---

**6.** Plaintiff cites *Watkins v. U.S. Army,* 875 F.2d 699 (9th Cir.1989), for the proposition that the Army can be equitably estopped from barring a soldier from reenlistment. In that case, the Court of Appeals found that the Army improperly disallowed a gay man from reenlisting because of his sexuality, when the soldier had admitted to being gay throughout his fourteen year career and had repeatedly been allowed to reenlist in spite of his admission. Estoppel was allowed in *Watkins* because the Army had represented for years that the soldier should be allowed to reenlist, and to have allowed the Army to later deny reenlistment would work a serious injustice. In our case, the Army simply allowed McIntyre to

reenlist notwithstanding a history of NJPs; it does not appear that the Army, by either deed or implication, represented that the NJPs would be of no importance in future separation proceedings. In any event, to apply estoppel here against the government (difficult in any circumstance, *see Office of Personnel Management v. Richmond,* 496 U.S. 414, 424–34, 110 S.Ct. 2465, 2471–77, 110 L.Ed.2d 387 (1990)) would wreak havoc on the QMP, for any NJPs, which at present are an important factor in QMP screening, would be "wiped clean" at the start of each new term of enlistment, an effect unintended by the Army in its QMP screening and one which the court refuses to endorse.

pelled the Board to reach the result it did. There is no indication here that the ABCMR's decision was arbitrary, contrary to law or regulation, or unsupported by substantial evidence.

Because the court lacks jurisdiction over this matter, defendant's motion to dismiss for lack of jurisdiction is *granted.* Plaintiff's cross-motion for summary judgment is denied. The Clerk of the Court is ordered to dismiss the complaint. No costs.