Solveiga A. KIM, Plaintiff,

v.

**The UNITED STATES, Defendant.**

No. 99–199 C.

United States Court of Federal Claims.

Sept. 8, 2000.

28 U.S.C. § 1491(a)(2).

494

Michael S. Strimling, Oakland, CA, for plaintiff.

James C. Caine, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant, with whom were James M. Kinsella, Deputy Director; David M. Cohen, Director;

and David W. Ogden, Acting Assistant Attorney General. LTC Terry L. Elling and Capt. Arden B. Levy, United States Army Legal Services Agency, Arlington, Virginia, of counsel.

## OPINION

DAMICH, Judge.

### I. Introduction

This military pay case comes before the Court on Defendant's motion to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1) of the Court of Federal Claims (RCFC) or, in the alternative, for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(4). Defendant contends that this Court lacks jurisdiction to consider Plaintiff's claims because Plaintiff voluntarily resigned from the Army. In the alternative, Defendant argues that Plaintiff's complaint is nonjusticiable because it challenges the substance of the Army's decisions. Although Defendant's motion is pursuant to RCFC 12(b)(1), the Court believes that it is more appropriate to proceed pursuant to RCFC 12(b)(4). Since this is a military pay case, the Court has subject matter jurisdiction (RCFC 12(b)(1)). The Court proceeds pursuant to RCFC 12(b)(4), because an officer who voluntarily resigns from the military fails to state a claim upon which relief can be granted. For the reasons stated herein, the Defendant's Motion to Dismiss is GRANTED.

### II. Factual Background

On October 23, 1978, Plaintiff was commissioned as a Major in the United States Army Medical Service Corps. In 1988, when Plaintiff was a Lieutenant Colonel, she received an adverse Officer Evaluation Report (OER) for her performance and potential as the chief pathologist in Seoul, Korea.[1] Plaintiff contends that this adverse rating constituted a reprisal for her refusal to cooperate in a cover-up of possible medical malpractice by her rater and senior rater, Colonel Hick and Colonel Bowen.[2] Plaintiff was not selected for promotion to Colonel during promotion boards held during the years 1988 to 1996.

On August 13, 1992, the Army, citing the 1988 OER as a reason, initiated elimination proceedings against Plaintiff. On March 1, 1993, Plaintiff petitioned the Army Board for Correction of Military Records (ABCMR) to amend her 1988 OER. Plaintiff requested that the OER be corrected to reflect the same rating as the OER immediately preceding it, and to replace the senior rater's comments with the senior rater's comments from the previous year's OER. Plaintiff made this request even though the earlier rating was for a different position, and was made by a different person from the one for the contested period. On April 7, 1993, the ABCMR denied Plaintiff's petition. On May 23, 1994, the ABCMR denied her request for reconsideration.

On April 20, 1994, a Board of Inquiry considering the Army's proposed elimination of Plaintiff found the reasons for Plaintiff's elimination to be unsubstantiated and unsustained, and recommended her retention. However, the findings did not show that her commander (senior rater) took reprisal against her for implicating him in an alleged cover-up of medical malpractice by submitting an improper 1988 OER.

1. This OER evaluated her performance as a manager and leader. The report that preceded it was an annual report written while Dr. Kim was a staff pathologist. That report evaluated her technical proficiency as a pathologist, not as manager in charge of the entire department.

2. According to Plaintiff, on January 8, 1988, an autopsy was performed on Clifford Bradley, a 24–year–old soldier, who had collapsed on a basketball court. During the autopsy, Captain Margaret Richardson, a staff pathologist, discovered that a respiration tube inserted by the attending medical personnel had been inserted in Bradley's stomach instead of his lungs. Plaintiff alleges that several days after the autopsy, she was approached to alter the findings on the death certificate to reflect that someone had misplaced the endotracheal tube postmortem. Plaintiff asserts that she refused to alter the death certificate. Sometime thereafter, Plaintiff claims that she saw a copy of Bradley's death certificate in which the incorrect positioning of the tube had been deleted. Plaintiff made sure that a clerk corrected the certificate to reflect the autopsy finding. Plaintiff alleges that her commanders at the hospital discovered what she had done and acted in reprisal against her by giving her a low rating in her 1988 OER.

On September 25, 1995, Dr. Kim again petitioned the ABCMR to reconsider its earlier decision not to amend her 1988 OER. She supplemented her petition numerous times up to May 10, 1998, and expanded her petition to request amendment of her 1996 OER. The ABCMR denied her request for reconsideration on January 13, 1999. Plaintiff alleges that the Correction Board considered "other OER's" and irrelevant factors such as Plaintiff's general potential for promotion rather than the issues presented by Plaintiff.

On April 9, 1997, the Army initiated elimination proceedings against Plaintiff for substandard performance. According to Defendant, in lieu of separation, Plaintiff voluntarily retired from the service in order to obtain retirement benefits. Plaintiff's request for early retirement was tendered on May 5, 1997, and became effective on August 31, 1997.

On April 5, 1999, Dr. Kim filed a complaint in the United States Court of Federal Claims. An amended complaint was filed on November 11, 1999. Plaintiff appeals the ABCMR denial of her request for reconsideration issued on January 13, 1999, after her retirement. Plaintiff contends that the denial of relief was arbitrary, capricious, unsupported by substantial evidence, and/or contrary to law. Plaintiff further asserts that her retirement was involuntary because she was constructively discharged through the initiation of elimination proceedings. Plaintiff also alleges that her retirement was coerced and under duress and induced by representations of the Army that the review and correction of Plaintiff's records by the ABCMR would continue regardless of whether Plaintiff retired. Plaintiff also contends that there was a "concerted plan" to eliminate her from the Army. Plaintiff alleges that she was subjected to harassment and attempts to discredit and intimidate her.[3] Plaintiff seeks back pay, correction of her 1987–1988 Officer Evaluation Report (OER),

and reinstatement to the rank of Lieutenant Colonel in the Army. Additionally, Plaintiff contends that the administrative record produced by the government in this case does not contain any of the taped testimony and other evidence Plaintiff presented to the 1994 Board of Inquiry hearings.

## III. Discussion

### A. Motion to Dismiss Pursuant to RCFC 12(b)(4)

■ Defendant asks this Court to dismiss Plaintiff's complaint pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction. The basis of this argument is that Defendant claims Plaintiff resigned voluntarily. According to Defendant, when an officer leaves the military voluntarily, this Court lacks subject matter jurisdiction. Although the Court agrees that Plaintiff's complaint should be dismissed, the appropriate inquiry is whether Plaintiff has stated a claim for which relief can be granted. *See Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir.1999). An officer who has voluntarily resigned from the military fails to state a claim upon which relief can be granted because such claims are not brought pursuant to a money mandating statute. *Adkins v. United States*, 68 F.3d 1317, 1321 (Fed.Cir. 1995).

"A motion to dismiss under Rule 12(b)(4) for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not under the law entitle him to a remedy .... In reviewing the dismissal under Rule 12(b)(4), we are mindful that we must assume all well-pled factual allegations as true and make all reasonable inferences in favor of ... the non-movant." *Perez v. United States*, 156 F.3d 1366, 1370 (Fed.Cir.1998). "Dismissal under Rule 12(b)(4) is appropriate only when it is beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief .... Because

---

**3.** Specifically, Plaintiff alleges she was: accused of a mix-up with a tissue sample, an accusation that later was found to be untrue; denied equipment that other pathologists received; told negative remarks about her leadership which proved to be untrue; given a heavier work load compared to her peers; and given unfavorable tasks, poor working space and conditions. Additionally, Plaintiff notes that she received a letter from the Inspector General, a day before the initiation of elimination proceedings, which found her allegations against Colonel Bowen unfounded.

granting such a motion summarily terminates the case on its merits, courts broadly construe the complaint, particularly in light of the liberal pleading requirements under the Federal Rules of Civil Procedure." (citations omitted; internal quotation marks omitted). *Ponder v. United States,* 117 F.3d 549, 552–53 (Fed.Cir.1997).

The threshold issue before the Court is whether Plaintiff's retirement from the Army was voluntary or involuntary. If the Court finds that Plaintiff's retirement was voluntary, then Plaintiff has waived all entitlement to relief. Resignations are presumed to be voluntary unless a plaintiff comes forward with sufficient evidence to rebut the presumption, and establish that the resignation was involuntary. *Covington v. Dep't of Health and Human Servs.,* 750 F.2d 937, 941 (Fed.Cir.1984). Determination of whether a specific resignation or retirement qualifies as voluntary requires an examination of all the facts and circumstances. *Id.* The question for the Court is whether the plaintiff exercised a free choice in making the decision to retire or resign. *McIntyre v. United States,* 30 Fed.Cl. 207, 211 (1993).

In the case at bar, Plaintiff retired from the Army on August 31, 1997. In order for Plaintiff to state a claim upon which relief can be granted, Plaintiff must rebut the presumption of voluntariness. The presumption that a retirement is voluntary can be rebutted if a plaintiff can demonstrate that (1) plaintiff resigned or retired under duress or coercion caused by the government; or (2) the government misrepresented information and that plaintiff detrimentally relied upon such information. *Nickerson v. United States,* 35 Fed.Cl. 581, 586 (1996). In order to obtain a hearing on the issue of voluntariness, a plaintiff must allege facts that would make out a prima facie case of involuntariness, if proven. *See Dumas v. Merit Sys. Protection Bd.,* 789 F.2d 892, 894 (Fed.Cir. 1986).

## 1. Duress/Coercion

A resignation is considered to have been submitted under duress, and therefore not voluntary, when: "(1) one side involuntarily accepted the terms of another; (2) the circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party." *Christie v. United States,* 207 Ct.Cl. 333, 518 F.2d 584, 587 (1975). In order to prevail on a claim of duress and government coercion, Plaintiff must establish all three elements of the test. *Bergman v. United States,* 28 Fed. Cl. 580, 586 (1993). Moreover, duress is not measured by Plaintiff's subjective evaluation of its circumstances but rather the Court must engage in an objective evaluation of all the facts. *Id.*

Defendant argues that Plaintiff voluntarily submitted her request for early retirement as a means to avoid administrative elimination without retirement benefits. Specifically, Defendant argues all three elements of the test of duress are not satisfied.

In response, Plaintiff presents three arguments. First, Plaintiff argues that the elimination action Plaintiff faced is sufficient coercion to render the retirement involuntary. Second, Plaintiff argues that the Army was on notice that Plaintiff considered her retirement involuntary and, thus, the government is estopped from claiming the retirement was voluntary. Third, Plaintiff argues that because some of the cases cited by Defendant involved plaintiffs accused of criminal misconduct, and Plaintiff was not charged with misconduct, Plaintiff's retirement is clearly coerced. The Court finds Plaintiff's arguments unpersuasive.

Plaintiff has failed to show that her retirement was obtained by coercion or duress. Here, Plaintiff voluntarily accepted the terms of her retirement. Plaintiff's letter of May 4, 1997, to Ms. Sara Lister, in the Office of the Assistant Secretary of the Army, requested Ms. Lister's assistance in obtaining early retirement. Subsequently, on May 5, 1997, Plaintiff signed a three-page statement requesting that Plaintiff be released from active duty and assignment on August 31, 1997, and placed on the retired list on September 1, 1997. The memorandum represents a knowing and intelligent decision by Plaintiff.

Plaintiff had a reasonable alternative to requesting retirement. Although Plaintiff may have subjectively believed she

had no alternative but to retire, the fact remains that Plaintiff had the option of challenging the elimination action before a Board of Inquiry. In the Army's notice to Plaintiff of the elimination action, it specifically stated that in "lieu of resignation" you may "submit a rebuttal or a declination statement and request appearance before a Board of Inquiry." Furthermore, the notice informed Plaintiff that she was entitled to have an "officer of the Judge Advocate General's Corps appointed as counsel." Plaintiff also had the option of seeking her own civilian counsel. Nonetheless, Plaintiff chose not to consult with counsel and chose not to request a Board of Inquiry. A choice between two unpleasant alternatives does not make the decision to retire involuntary. *Christie*, 518 F.2d at 587. The court in *Christie* stated:

> While it is possible plaintiff, herself, perceived no viable alternative but to tender her resignation, the record evidence supports CSC's finding that plaintiff chose to resign and accept discontinued service retirement rather than challenge the validity of her proposed discharge for cause. The fact remains, plaintiff had a choice. She could stand pat and fight. She chose not to. Merely because plaintiff was faced with an inherently unpleasant situation in that her choice was arguably limited to two unpleasant alternatives does not obviate the voluntariness of her resignation.

*Id.* Here, Plaintiff could fight or retire. Plaintiff chose to retire in order to ensure that she would receive retirement benefits. Thus, Plaintiff's retirement was voluntary.

This court cannot attack the Army's initiation of elimination proceedings against Plaintiff. The Army's job is to defend the country. Implicit in this responsibility is the task of deciding which soldiers to promote and which to terminate. "Determinations concerning who is fit and who is unfit to serve in the military are within the discretion of the military." *Longhofer v. United States*, 29 Fed.Cl. 595, 605 (1993). Here, the Army initiated elimination proceedings against Plaintiff on April 9, 1997, during an annual review by the Colonel, Medical Corps (MC) Promotion Selection Board. Specifically, the Army found an overall downward trend in

performance and that Plaintiff's record reflected consistent mediocre service. As substantiation, the Army listed numerous OER's. The 1988 OER, which Plaintiff asks this Court to correct, was not referenced as a reason for the elimination action. Instead of challenging the elimination action with a Board of Inquiry, Plaintiff essentially wants this Court to determine that the Army's decision to initiate elimination proceedings was improper, therefore, coercive. Plaintiff argues that the OER's actually "say very glowing things" and that Plaintiff was "frequently lauded for her management, for her leadership, for her skills as a pathologist." The Court is not in a position to substitute its judgment for that of the Army's in deciding who is fit and who is not fit to serve in the military. Plaintiff cannot evade a Board of Inquiry, and then expect this Court to review her OER's to determine whether the initiation of elimination proceedings was unsubstantiated. If Plaintiff believed that the elimination action was unsubstantiated, she should have presented these arguments to a Board of Inquiry.

Plaintiff also argues that other circumstances which occurred near the time of the initiation of elimination proceedings in April of 1997, contributed to the coercive nature of the environment that led to her involuntary retirement. For instance, Plaintiff mentions the letter from the Inspector General which found her allegations against Colonel Bowen concerning her 1988 OER as unfounded and the redacted version of the Inspector General report. Although the Court understands how disturbing it must have been for Plaintiff to have her allegations against Colonel Bowen rejected, the rejection does not amount to a coercive act on the part of the Army. Plaintiff may disagree with the outcome of the investigation, but it appears Plaintiff's allegations were considered by the Army and rejected.

Plaintiff also describes other alleged acts on the part of Army personnel that led up to Plaintiff's retirement. Even assuming these were coercive acts on the part of the Army, her retirement is still voluntary since this would only establish the third element for the test of duress. Because Plaintiff had the

option of challenging the elimination action before a Board of Inquiry, she fails to establish all three elements of the test for duress. Thus, Plaintiff has failed to rebut the presumption that her retirement was voluntary.

Rather than squarely addressing all of the elements for duress, Plaintiff argues that an unjust action to remove alone is sufficient coercion to make a retirement involuntary. Specifically, Plaintiff argues that the initiation of the elimination action and the flagging of Dr. Kim's career constitute coercion and thus make her retirement involuntary. Plaintiff compares her situation to 3 cases, *Adkins v. United States*, 68 F.3d 1317 (Fed. Cir.1995); *Braun v. Dept. of Veterans Affairs*, 50 F.3d 1005 (Fed.Cir.1995); and *Roskos v. United States*, 213 Ct.Cl. 34, 549 F.2d 1386 (1977).

Plaintiff's reliance on *Adkins* is misplaced. The present situation is distinguishable from *Adkins* because in that case the statute provided that the plaintiff's retirement was involuntary as a matter of law. There, the court based its conclusion on the fact that Adkins was selected for early retirement pursuant to 10 U.S.C. § 638a(b)(2)(A). *Adkins*, 68 F.3d at 1321. Section 638a(e) provided that the "retirement of an officer pursuant to this section shall be considered to be involuntary for purposes of any other provision of law." 10 U.S.C. § 638a(e) (1994). *Id.* Because Adkins's retirement was pursuant to § 638, the court found the retirement involuntary for the purpose of establishing Tucker Act jurisdiction. *Id.* The facts in this case are unlike those in Adkins because here there is no statute that provides that retirement is involuntary as a matter of law. Rather, Plaintiff's retirement is presumed voluntary.

This case is also unlike the situation in *Braun v. Dept. of Veterans Affairs*, 50 F.3d 1005, 1008 (Fed.Cir.1995). In *Braun*, the plaintiff was a maintenance foreman in the engineering service at the Department of Veterans Affairs' Medical Center in Boise, Idaho. *Id.* at 1007. Plaintiff alleged that his resignation was the result of improper coercion. *Id.* In the last seventeen months of his employment, plaintiff received eleven disciplinary actions. *Id.* Plaintiff responded by filing a number of grievances, a complaint with the Department of Labor, and nine informal complaints alleging discrimination or reprisal for having filed the earlier complaints. *Id.* The Federal Circuit remanded to the administrative judge for an evidentiary hearing on the issue of voluntariness of plaintiff's resignation because it had found that plaintiff had made a non-frivolous allegation that, if proven, could establish that the resignation was coerced. *Id.* at 1008. In *Braun*, the court focused on the frequency of the disciplinary actions that plaintiff was subjected to in a short time period and plaintiff's prior successful evaluations and successful grievances in determining whether plaintiff set forth a non-frivolous allegation that his resignation was involuntary.

The case at bar is distinguishable because Plaintiff was not subject to continuing disciplinary actions as was the plaintiff in *Braun*. Here, Plaintiff had been selected for elimination because of an overall downward trend in her performance as evidenced by negative OER's throughout her military career. Moreover, Plaintiff's allegations of reprisal by Colonel Bowen concerning Plaintiff's 1988 OER were rejected by the Inspector General's Office as unfounded. Thus, Plaintiff's analogy falls short.

Plaintiff's reliance on *Roskos v. United States*, 213 Ct.Cl. 34, 549 F.2d 1386, 1389 (1977) is also misplaced. In *Roskos*, the court held that plaintiff's retirement was involuntary because plaintiff's wrongful transfer to a distant city coupled with the hardship to his family constituted "unjustifiable coercive action by the Government." *Id.* In its analysis the Court of Claims considered and found all three elements necessary for duress met. The court found that plaintiff had no practicable alternative other than resigning. Specifically, the court concluded that it was infeasible for plaintiff to commute daily to Philadelphia from Scranton. *Id.* Because it was unknown how long the appeal of the transfer would take, the court concluded that it was impracticable for plaintiff to relocate his family to Philadelphia. *Id.* Thus, it was not the reassignment alone that rendered the resignation involuntary.

The present situation is distinguishable from *Roskos* because in that case the court found that the plaintiff did not have a practicable alternative. However, in this case, Plaintiff had a reasonable alternative—challenge the elimination action before a Board of Inquiry.

Plaintiff next argues that the Army was on notice that Plaintiff considered her retirement to be involuntary, estopping the Army from claiming it was voluntary. Plaintiff relies on a May 4, 1997, letter to Ms. Lister in the Army Undersecretary's Office, in which Plaintiff asked for help in seeking early retirement. Plaintiff argues that this letter "cries out that Dr. Kim was being coerced and scapegoated." Plaintiff also argues that the Army had a duty to inquire about the voluntariness of Dr. Kim's retirement.

Plaintiff's argument is without merit. The issue is not whether Plaintiff considered her retirement to be involuntary but rather whether under an objective standard her retirement was obtained by duress or coercion. *See Christie*, 518 F.2d at 587. Plaintiff's subjective feelings of duress are irrelevant. In Plaintiff's letter of May 4, 1997, to Ms. Lister, Plaintiff clearly is writing to seek assistance in obtaining early retirement. The relevant portion reads:

There exists an early retirement window for FY 97. The deadline for application for this early retirement is 1 June 1997. I have 18 years and 7 months of service at this time and would like to apply to leave by an ETS date of 1 September 1997.

On 21 April 1997 I received yet another notice that I had been proposed for elimination from the Army.

I would appreciate your assistance in my obtaining the early retirement. I will have 18 years and 10 months of service by the retirement date of 1 September 1997. I understand that all elimination actions aimed at service members with more than 18 years of service are reviewed by you.

I would deeply appreciate your help. Thank you.

The letter was signed by Plaintiff. Although Plaintiff's letter begins with a summary of perceived injustices during her military career, at most this is evidence of Plaintiff's subjective belief. The purpose of the letter was to seek assistance in obtaining early retirement. Plaintiff does not write to seek assistance for any other matters. The Court finds that the letter represents Plaintiff's exercise of her free choice in pursuing retirement rather than the option of challenging the elimination action before a Board of Inquiry. Moreover, Plaintiff's May 5, 1997, formal request for retirement did not contain language that her retirement was under protest. In any event, language of protest is irrelevant to a determination of voluntariness. *See McGucken v. United States*, 187 Ct.Cl. 284, 407 F.2d 1349, 1350 (1969) (language of protest included with resignation did not render resignation involuntary); *See also Tannehill v. United States*, 18 Cl.Ct. 296, 297 (1989) ("submission of the application 'under protest' had no effect on its voluntariness.").

The Court also disagrees with Plaintiff's contention that the Army had a duty to inquire into the voluntariness of Plaintiff's retirement. Plaintiff does not point to any regulation or statute that required a statement of voluntariness or findings of voluntariness. The precedents cited by Plaintiff undermine, rather than support, her position.

In *Nickerson v. United States*, 35 Fed.Cl. 581, 584 (1996), the plaintiff was found to be unfit for duty because of a physical disability. The court held that the Navy officer's honorable discharge was voluntary because it concluded that the plaintiff could have challenged his medical discharge rather than have accepted it. *Id.* at 586–87. In its analysis, the court considered the three elements for duress and concluded they were not met because the plaintiff had a viable option. *Id.* at 587–88. According to 10 U.S.C. § 1214 (1994), no member of the armed services could be separated due to a physical disability without a formal hearing if the member demanded one. *Id.* at 587. Thus, plaintiff was presented with three options, these included: "(1) accepting the Panel's finding and requesting or declining limited duty status; (2) declining the finding and requesting a formal Physical Evaluation Board (PEB) hearing; or (3) conditionally accepting the finding with explanation." *Id.* The plaintiff

accepted the Panel's finding and did not request a "limited duty status finding," or request a formal hearing. *Id.*

Likewise in *McIntyre v. United States*, 30 Fed.Cl. 207, 209–10 (1993), the Army was required to present enlisted persons receiving a bar to reenlistment with a "Statement of Option." In that case, the plaintiff chose the third option available to him which was to forego filing an appeal and to request an immediate discharge. *Id.* at 212. The court held that plaintiff failed to demonstrate that his retirement was the result of duress. *Id.* The court reasoned that plaintiff could have submitted an appeal or completed the remaining term of enlistment, but plaintiff exercised its free choice and requested a discharge. *Id.*

In the case at bar, Plaintiff was also given options at the time the elimination action was initiated. Plaintiff had two options. Plaintiff could resign in lieu of elimination or, in lieu of resignation, submit a rebuttal or a declination statement and request appearance before a Board of Inquiry. Plaintiff was also informed that legal counsel was available. Here, Plaintiff considered the options presented and chose to retire. Plaintiff seems to suggest that she should have been given options to protest at the time Plaintiff requested early retirement. The Court finds this reasoning flawed because Plaintiff fails to identify any statute or regulation mandating a duty on the part of the Army to obtain an express statement of voluntariness. Plaintiff's request for early retirement is presumed to be voluntary and in this case Plaintiff has failed to rebut this presumption. *See Bergman*, 28 Fed.Cl. at 585.

The Court also finds that in this case it is irrelevant to the determination of voluntariness that Plaintiff was not charged with criminal conduct or other misconduct. Plaintiff suggest that courts tend to find resignations or retirements voluntary in cases where plaintiffs have been charged with such conduct. The Court does not need to make such a determination. In this case, the fact that Plaintiff was not charged with criminal conduct is irrelevant to the conclusion that her retirement was voluntary. The fact remains the circumstances provided Plaintiff an alternative of challenging the elimination action. Because Plaintiff fails to establish all three elements of the test for duress, she does not rebut the presumption that her retirement was voluntary.

**2. Misrepresentation**

The presumption that a resignation or retirement was submitted voluntarily may also be rebutted if plaintiff can establish that the government agency misrepresented information and that plaintiff detrimentally relied upon such information. *Bergman*, 28 Fed.Cl. at 585. The court must apply an objective test. *Id.* at 588. The subjective perceptions of the employee and the subjective intentions of the agency are not relevant. *Id.* In order to prevail on a claim of misrepresentation plaintiff must establish both "that a reasonable person would have been misled by the agency's statements" and that the plaintiff did, in fact, rely on those statements. *Id.* "Establishing that the agency intentionally deceived the employee, however, is not required for the court to declare a resignation involuntary." *Id.* "The misleading information can be negligently or even innocently provided; if the employee materially relies on the misinformation to his detriment, his retirement is considered involuntary." *Covington*, 750 F.2d at 942.

In this case, Plaintiff contends that she was misled to believe that the ABCMR and other proceedings that were investigating Plaintiff's allegations would continue in the same manner as if Plaintiff had not retired. Plaintiff argues that the Army never informed her that an appeal of the ABCMR decision would be unreviewable by this Court if Plaintiff retired.

The issue before the Court is whether a reasonable person would have construed the statements by the officers to encompass a right of appeal to the Court of Federal Claims. The Court holds that while Plaintiff may have had a right to rely upon the Army officers for advice regarding the ABCMR, Plaintiff had no right to rely upon the officers for advice on the jurisdiction of this Court.

In *Bergman,* the court held that there was no misrepresentation where an Air Force personnel specialist gave the plaintiff correct advice as to its rights before the Air Force Board of Correction of Military Records (AFBCMR) but incorrect advice regarding plaintiff's appeal rights to the federal courts. *Bergman,* 28 Fed.Cl. at 585. Specifically, the plaintiff alleged that Air Force personnel advised that it would have no right of appeal from an AFBCMR decision. *Id.* at 588. The court stated:

> CMSgt Badour, a personnel specialist, gave plaintiff accurate advice regarding his lack of right to an appeal within the military infrastructure. The court has no reason to hold CMSgt Badour to a higher level of knowledge pertaining to the jurisdictional rights of the federal court system.

*Id.* Thus, the court's conclusion that statements by the officer did not amount to a misrepresentation were based on its notion of the boundaries of the officer's knowledge. The Court also finds this reasoning applicable in the present case.

Specifically, Plaintiff alleges that Plaintiff's husband was told by Major Lee Honejki, Special Assistant to Ms. Sarah Lister, Assistant Secretary of the Army, Manpower and Reserve Affairs, that the ABCMR proceeding and other proceedings investigating Plaintiff's allegations would continue in the same manner regardless of whether Plaintiff retired.[4] Mr. Kim also alleges that he was told by Major Honejki, if the ABCMR corrected Plaintiff's records, that she would be reconsidered for promotion and reinstatement. Thus, "there was nothing to lose by retiring."

The Court believes that the Army accurately stated the facts concerning the ABCMR petition. Indeed, in this case the ABCMR continued to review Plaintiff's allegations after Plaintiff retired from the Army. The context and scope of Mr. Kim's discussions with Army personnel focused on the continuation of the ABCMR proceeding. It appears that Plaintiff was concerned that the ABCMR would end its investigation if Plain-

tiff voluntarily retired. Major Honejki and other officers with whom Plaintiff's husband spoke never offered advice as to appeal rights from the ABCMR, nor did Plaintiff expressly ask about her power to appeal the ABCMR decision to this Court. A reasonable person under the circumstances would construe the statements by the Army officers to concern proceedings within the military infrastructure and not to extend to proceedings in the federal courts. There is no reason to believe that the Army personnel officers with whom Plaintiff spoke would have an affirmative duty to inform Plaintiff of her appellate rights to the federal courts. Because the Army was accurate, Plaintiff was not misled.

The cases cited in support by Plaintiff are distinguishable from the present situation. In *Covington,* the court held a civilian employee's retirement involuntary because it found that he was misled by false and inadequate information contained in a reduction-in-force (RIF) notice. *Covington,* 750 F.2d at 944. The RIF informed the plaintiff that the agency he worked for was going to be abolished and that the plaintiff had no right of assignment to another position. *Id.* at 942. Relying on this information, the plaintiff retired. *Id.* The RIF notice was erroneous because several functions of the agency were actually transferred to another agency and the plaintiff was not informed of this. *Id.* at 943. Moreover, the court found that it was reasonable for the plaintiff to have relied upon the government's statement that he would have no opportunity for reassignment. *Id.* at 942. Because the agency in *Covington* had provided misinformation, the court reasoned that it was under an affirmative duty to provide correct information so that plaintiff would be able to make an informed choice. *See Id.* at 943.

Unlike the situation in *Covington,* Plaintiff in this case was not presented with inconsistent information regarding the ABCMR proceedings. Here, Plaintiff was told the ABCMR proceedings would continue regardless of whether Plaintiff retired. The

---

4. Plaintiff's husband carried with him a signed authorization from Plaintiff giving him permission to inquire into matters on behalf of his wife.

ABCMR did continue after Plaintiff's retirement. Thus, the Army did not have an affirmative duty to provide any additional information as the agency had in *Covington.*

Plaintiff also relies on *Tippett v. United States,* 185 F.3d 1250 (Fed.Cir.1999), where the court held a dismissal inappropriate where an officer made a non-frivolous allegation that his resignation decision was motivated by his military attorney's alleged erroneous advice about the legal effects of a resignation and his future ability to obtain an appointment with the U.S. Army Reserves. *Id.* at 1258.

*Tippett,* however, does not provide support for Plaintiff. In that case, it was reasonable for the plaintiff to rely on advice given to him by his military attorney regarding the legal implications of his resignation. Unlike the situation in *Tippett,* Plaintiff was not given advice as to the jurisdiction of this Court nor is it reasonable to conclude that she was entitled to such advice from the Army officers that she and her husband consulted.

In short, Plaintiff has failed to rebut the presumption that her retirement was obtained by misrepresentation.

## IV.  Conclusion

Plaintiff voluntarily retired from the Army. Retirements are presumed to be voluntary. To rebut the presumption of voluntariness, Plaintiff must show that her retirement was obtained by either duress or misrepresentation. Assuming that all well-pled factual allegations are true and with all reasonable inferences in favor of Plaintiff, Plaintiff fails on both. It is hereby ORDERED that Defendant's Motion to Dismiss is GRANTED. The Clerk is directed to dismiss the complaint with prejudice because Plaintiff fails to state a claim upon which relief can be granted.