ROGERS, Circuit Judge,
concurring.
The Navy has never challenged Rev. D. Philip Veitch’s lawsuit on the ground that he states no cause of action for constructive discharge. As the court acknowledges, Op. at 127 n. 2, the existence of a cause of action in a complaint is not jurisdictional and may be assumed without being decided by the court. Air Courier Conference v. Am. Postal Workers Union, 498 U.S. 517, 523 n. 3, 111 S.Ct. 913, 112 L.Ed.2d 1125 (1991) (citing Burks v. Lasker, 441 U.S. 471, 476 n. 5, 99 S.Ct. 1831, 60 L.Ed.2d 404 (1979)). Although courts enjoy discretion to consider non-jurisdictional issues raised for the first time on appeal, Acree v. Republic of Iraq, 370 F.3d 41, 58 (D.C.Cir.2004), no “extraordinary circumstances” exist here as would warrant the court’s consideration of the issue. See Roosevelt v. E.I. Du Pont de Nemours & Co., 958 F.2d 416, 419 n. 5 (D.C.Cir.1992). The Navy has never argued in the district court or this court that Rev. Veitch has failed to state a cause of action for constructive discharge. Consequently, the is *133 sue has not been briefed by the parties on appeal. Further, during oral argument, when the court raised the issue, counsel for the Navy did not adopt the position that there was no such cause of action.
Because, regardless of the cause of action, the evidence shows that Rev. Veitch voluntarily resigned from the Navy, he lacks standing to bring, and the court lacks jurisdiction to consider, his claim for reinstatement or his equitable claims regarding the conditions of his former employment. See Taylor v. Fed. Deposit Ins. Corp., 132 F.3d 753, 766-68 (D.C.Cir.1997). Consequently, the court has no occasion to consider the nature of the evidentiary burden, Op. at 127-28, nor whether Rev. Veitch met that evidentiary burden in opposing the Navy’s motion for summary judgment to show that the Navy’s “pluralism” policy[1] violated his rights under the First and Fifth Amendments; the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb; or Navy regulations.
The Navy rightly points out that if Rev. Veitch cannot prove that he was constructively discharged from the Navy, all of his remaining claims, which concern the conditions of his former employment as chaplain and for which he seeks only injunctive and declaratory relief, fail for lack of Article III standing. The Supreme Court has instructed that “[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects.” City of L.A. v. Lyons, 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (quoting O’Shea v. Littleton, 414 U.S. 488, 495-96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)) (omission and alteration in original, internal quotation marks omitted). If Rev. Veitch’s resignation from the Navy was voluntary, then he has no legal right to reinstatement to his position as a Navy chaplain, and the court cannot grant him the declaratory and injunctive relief he seeks regarding the conditions of his prior employment. This court stated in Bois v. Marsh, 801 F.2d 462, 466 (D.C.Cir.1986), that a plaintiff who has voluntarily resigned from the armed forces “stands in the civil courts as a civilian seeking reform of military procedures to which she is no longer subject.” To bring this appeal claiming First and Fifth Amendment and statutory violations, therefore, Rev. Veitch must be able to show that his resignation is traceable to the Navy, specifically, on his terms, that he was coerced as a result of retaliation by the Navy for protesting the alleged religious discrimination and statutory violations he suffered. In other words, Rev. Veitch must prove constructive discharge.
This court has declared:
“[A] constructive discharge occurs where the employer creates or tolerates discriminatory working conditions that would drive a reasonable person to resign.” It does not occur when an employee leaves an unpleasant but objectively tolerable job because alternatives have become more attractive, even if the employer’s misbehavior creates the unpleasantness ....
Taylor, 132 F.3d at 766 (quoting Katradis v. Dav-El of Wash., 846 F.2d 1482, 1485 (D.C.Cir.1988)) (alteration in original). The question, then, is whether Rev. Veitch has presented evidence from which a reasonable jury could conclude that his resig *134 nation was forced by the Navy. Although he is entitled as the non-moving party to the benefit of all reasonable inferences, he cannot rely in opposing summary judgment on mere allegations in his unsworn complaint, much less on assertions made in his brief on appeal;- the court may consider only sworn statements setting forth specific facts. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Liberty Lobby, Inc. v. Dow Jones & Co., 838 F.2d 1287, 1292 (D.C.Cir.1988); Fed. R. Civ. P. 56(e).
In Taylor, the court considered what constructive discharge requires. The plaintiffs in that case were former employees of the Resolution Trust Corporation (“RTC”) who alleged that RTC’s successor corporation, the Federal Deposit Insurance Corporation, retaliated against them for making protected disclosures in violation of the RTC Whistleblower Act, 12 U.S.C. § 1441a(q), and the First Amendment. 132 F.3d at 758-59. The court noted that the plaintiffs endured whatever the defendant inflicted upon them until May 1995, when they took advantage of the severance package offered by the Voluntary Separation Incentive Program. The plaintiffs did not suggest that any simultaneous increase in the “wattage of harassment” drove them out. Id. at 766. While the court noted that what would drive a reasonable person to resign “may vary with the character of the job for which the employee was hired and thus, indirectly, with the employee’s skills,” it held that the plaintiffs had presented no triable issue of fact on the question of constructive discharge. Id. The court vacated the grant of summary judgment and remanded the case for the district court to dismiss the complaint.
Rev. Veitch similarly claims that his resignation was forced because of past discrimination — which he tolerated while engaging in an exchange of emails with Captain Buchmiller, filing an Equal Opportunity complaint, and considering filing another complaint. Ultimately, however, Rev. Veitch resigned rather than face disciplinary proceedings for his disrespectful emails and unexplained absences. This does not render his resignation involuntary. See Pitt v. United States, 190 Ct.Cl. 506, 420 F.2d 1028, 1032-33 (1970); Kim v. United States, 47 Fed.Cl. 493, 497-98 (2000). Rev. Veitch presents no evidence to suggest that past discrimination required him to be disrespectful in violation of the Uniform Code of Military Justice as alleged, or, shy of that, that the Captain’s Mast or court-martial proceedings would have been so unfair so as to force his resignation. To the contrary, the claims he raises here could have been raised before a Navy tribunal. Op. at 129.
Other courts have agreed that the standard for constructive discharge is quite high. “Resignations or retirements are presumed to be voluntary,” Tippett v. United States, 185 F.3d 1250, 1255 (Fed.Cir.1999), and a party alleging that a facially valid resignation was in fact the product of unlawful duress must prove three elements: (1) one side involuntarily accepted the terms of another; (2) the circumstances permitted no other alternative; and (3) the circumstances were the result of coercive acts of the opposite party, Roskos v. United States, 213 Ct.Cl. 34, 549 F.2d 1386, 1389 n. 11 (1977); see also Kim, 47 Fed.Cl. at 497. Under the standard for summary judgment, Rev. Veitch cannot succeed in showing here that the circumstances permitted no option except resignation from the Navy.
Alternatively, Rev. Veitch contends that the voluntariness of his resignation was vitiated by his attorney’s failure to inform him of Rigdon v. Perry, 962 F.Supp. 150 (D.D.C.1997). This argument strains ere- *135 dulity, for the district court opinion is binding neither on the Navy’s understanding of Article 89 of the Code of Military Justice nor on this court.
Article III standing requires the plaintiff to show that his injury is “fairly traceable to the defendant’s allegedly unlawful conduct.” Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). As the court reasoned in Taylor:
Our rejection of [the plaintiffs’] claim of constructive discharge is concomitantly a decision that their voluntary acts are sufficient independent causes of their separation from the RTC.
This is quite consistent with [the plaintiffs’] (theoretically) having a claim against the RTC for its earlier mistreat-ment____Had [the plaintiffs] remained [employed at the RTC], they might have been entitled to some sort of restoration of their earlier status; having left under circumstances for which the RTC is not legally culpable, however, they cannot claim that the RTC has deprived them of their jobs, even if its prior treatment of them, though falling short of constructive discharge, was actionable. Failing to show causation, they lack standing.
132 F.3d at 767. Had Rev. Veitch pressed his broad attack against the Navy’s “pluralism” policy only on constitutional and statutory grounds, the court would lack jurisdiction to hear the case altogether. However, Rev. Veitch also contends that the Navy acted arbitrarily and capriciously in denying his request to withdraw his resignation. Although he has standing to raise this claim, it fails on the merits, see Op. at 131-32.
Accordingly, because Rev. Veitch failed to present evidence establishing a material issue of disputed fact as to whether he was constructively discharged from the Navy, nor met his burden to show that the Navy acted unreasonably in denying his request to withdraw his resignation, I concur in affirming the grant of summary judgment to the Navy.

. The Navy's pluralism policy is discussed in the Zoeller Report, see Op. at 126, wherein Chaplain Gary Morris, of the United Methodist faith, reported that chaplain trainees "are taught that facilitating other religions and minislries is essential,” along with "respect for other differences and traditions of faith especially when [a Navy] chaplain might have a mixed [faith] congregation.” Joint Appendix at 649.